**Toby Earl JOHNSON, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C0-01-1597.

Supreme Court of Minnesota.

April 18, 2002.

Bradford Colbert, St. Paul, for Appellant.

Mike Hatch, Minnesota State Attorney General, St. PaulN, Michael K. Junge, McLeod County Attorney, Glencoe, for Respondent.

OPINION

PAUL H. ANDERSON, Justice.

Randy Pool was kidnapped and murdered in McLeod County in July 1999. Following the murder, petitioner Toby Earl Johnson was arrested and indicted for first-degree intentional murder while committing a kidnapping, second-degree intentional murder, and kidnapping. Pursuant to a plea agreement, the state amended the first count of the indictment to aiding and abetting a premeditated intentional murder. Johnson then pleaded guilty to both the amended first count and to the second count of second-degree intentional murder. According to the plea agreement, if Johnson provided "useful" information to the state, he would be sentenced on the second count, but if he failed to provide such information, he would be sentenced on the amended first count. Ultimately, the district court accepted the plea agreement, convicted Johnson on the amended first count, and sentenced him to a mandatory life sentence. Johnson petitioned for postconviction relief, arguing that the plea agreement violated separation of powers because the agreement provided that the state had the "sole discretion" to determine (a) whether Johnson would be convicted of the amended first count or the second count, and (b) the actual length of imprisonment. The postconviction court denied Johnson's petition. We affirm.

The facts giving rise to Johnson's conviction are as follows.[1] On July 14, 1999, Jason Caldwell and Salem Bernhardt were arrested at Randy Pool's house on outstanding warrants. Berhnardt had been living with Pool and sold methamphet-

1. The factual record in this case is not well-developed because Johnson pleaded guilty and consequently never went to trial. However, to provide additional factual context for

amine from Pool's house. Caldwell came from out of state to visit Bernhardt.

Four days after the arrests, Heather Ecklund visited Bernhardt in jail. Bernhardt asked Ecklund to find out who had turned him and Caldwell in to the police. That evening, Ecklund and Tanya Caldwell went to Pool's house and questioned Pool about Bernhardt's and Jason Caldwell's arrests and about some missing money and drugs. The questioning turned violent and Pool was beaten by Ecklund, Shawn McCollum, and Richard Ligenza. After trying to escape, Pool's assailants restrained him by taping his arms and legs. Between July 18 and July 20, Pool was tortured and beaten by Ecklund, McCollum, Johnson, Isaac Engstrom, and Scott Bernhardt. During much of this time, Pool was kept in a fruit cellar. On the night of July 20, Pool was placed in a duffel bag and beaten until he died. Ecklund, McCollum, Johnson, and Engstrom were present when Pool died. Ecklund, McCollum, and Engstrom subsequently dumped Pool's body into the Clearwater River in Wright County.

Hutchinson police took Johnson into custody on August 9, 1999, at which time Johnson gave a statement to the police in which he admitted that he had beaten and watched over Pool. Johnson also admitted that he was present when Pool was killed and that he stayed behind to clean up Pool's house while the others dumped the body. On September 2, 1999, a McLeod County grand jury indicted Johnson, along with Ecklund, McCollum, and Engstrom, for first-degree intentional murder while committing a kidnapping in violation of

Minn.Stat. § 609.185(3) (1998), second-degree intentional murder in violation of Minn.Stat. § 609.19, subd. 1(1) (2000), and kidnapping in violation of Minn.Stat. § 609.25, subd. 1(3) (2000).

On April 10, 2000, one day before the commencement of Johnson's trial, Johnson entered into a plea agreement with the state. Johnson's signed plea petition described the substance of the agreement as follows:

> The State will amend Count One to aiding and abetting Murder in the First Degree (609.185(1)). I will plead guilty to amended Count One (aiding and abetting Murder in the First Degree—609.185 (1)) and to Count Two (Murder in the Second Degree—609.19 Subd[.]1(1)). I ultimately will be convicted on only one of these two.

> If I choose to co[o]perate with the authorities and if in the sole discretion of McLeod County Attorney Michael Junge I have information that he deems useful then I will be convicted on Count Two. As part of that deal I agree to an upward durational departure from State Guidelines. I will receive an executed sentence of between 30 to 36 years. As before, Mr. Junge would have the sole discretion as to the actual length of imprisonment.

> If I choose not to cooperate with the authorities or in the alternative I do not possess information that Mr. Junge in his sole discretion deems to be useful, then I will be sentenced on the amended Count One.

> In either event the remai[ni]ng Count would be dismissed at the time of sen-

---

the procedural posture of this case, we restate some of the relevant facts from *McCollum v. State,* 640 N.W.2d 610 (Minn.2002). In *McCollum,* we detail the facts surrounding

the kidnapping and murder of Randy Pool from the trial record of Johnson's co-defendant Shawn McCollum. *Id.*

tencing. I understand that a PSI will be done prior to the actual date of sentencing.

At the hearing on the plea petition, the state moved to amend the first count of the indictment to aiding and abetting premeditated intentional murder in violation of Minn.Stat. §§ 609.05 (2000) and 609.185(1) (1998). By amending the indictment in this manner, the state was permitting Johnson, even if he did not provide useful information, to receive a more favorable sentence of life imprisonment with the possibility of release after serving 30 years rather than a term of life imprisonment without the possibility of release.[2] The state described the plea agreement's terms to the court in the following manner:

> Your Honor, it's my understanding that if the defendant is able to provide useful information which can be verified about which person directed the murder of Randy Pool and if we are able to corroborate that, and at my discretion solely, then at the time of sentencing I will dismiss Count 1 the First Degree Murder charge and he will be sentenced on Count 2 to a period of somewhere between 30 and 36 years in prison.
>
> It's my understanding that if he chooses not to provide any information or if the information cannot be corroborated, again based upon my discretion, that he would be sentenced on the Murder I charge and he would receive a life sentence, which means he would be eligible for parole after 30 years.

Following the state's description of the plea agreement, Johnson's attorney stated to the court that the description provided by the state was a correct summation of the proposed agreement. The court then granted the state's motion to amend the indictment, after which Johnson pleaded guilty to amended count one and count two. Following his plea, Johnson testified to the facts surrounding his role in Pool's kidnapping and murder. More specifically, Johnson admitted that he hit Pool a few times and that he had watched over Pool when he was in the cellar. Johnson also admitted that after Pool's body was removed from the house, he assisted in cleaning up the house and disposing of Pool's car.

Johnson also testified that he understood that even though he had just pleaded guilty to amended count one and count two, he would be convicted on only one of those counts. Johnson stated that he understood that if he chose not to cooperate with the state, then the court would con-

---

2. If Johnson were sentenced on count one, first-degree murder while committing a kidnapping, in violation of Minn.Stat. § 609.185(3), he would receive a sentence of life without the possibility of release under Minn.Stat. § 609.106, subd. 2(2) (2000). If Johnson were sentenced on amended count one, aiding and abetting first-degree murder in violation of Minn.Stat. §§ 609.05 and 609.185(1), he would serve an automatic life sentence and would not be eligible for release for at least 30 years under Minn.Stat. § 244.05, subd. 4 (1998). Finally, if Johnson were sentenced on count two, second-degree murder in violation of Minn.Stat. § 609.19, subd. 1(1), the maximum sentence he could receive is 40 years under Minn.Stat. § 609.19, subd. 1 (2000). But if sentenced under count two, he would be eligible for release after serving two-thirds of the sentence under Minn.Stat. §§ 244.01, subd. 8 (2000), and 244.05 (1998 and Supp.1999). By agreeing that a sentence under count two would be between 30 and 36 years, Johnson was agreeing to a sentence under which he would be eligible for release after between 20 and 24 years. Thus, if Johnson was sentenced under count two or amended count one, he would serve less time in prison than he would if he were sentenced on count one.

vict him on amended count one and dismiss count two. He also stated that he understood that if he did cooperate, it would be in the state's sole discretion to determine whether any information provided by him was useful. Johnson said he understood that if the state determined that information provided by him was not useful, he would be convicted on amended count one; but if the state, in its sole discretion, determined that he provided useful information, then he would be convicted on count two. On cross-examination, the state asked Johnson if he understood that the kind of information the state would view as useful was information supporting the state's belief "that there may have been somebody incarcerated in the McLeod County Jail" who directed Pool's death. Johnson responded that he understood this to be true.

Johnson was sentenced about six weeks later on May 26, 2000. At that time, the state moved for sentencing on amended count one. The court then heard arguments on whether Johnson had cooperated. Johnson's attorney asserted that Johnson had met with authorities and told them what he knew about the involvement of the various individuals in Pool's murder. The attorney stated that Johnson had cooperated sufficiently to receive the conviction on count two. However, without explaining its ruling, the court accepted Johnson's guilty plea to amended count one and sentenced Johnson to a mandatory life sentence with a minimum term of imprisonment of 30 years.

Approximately one year later, on May 2, 2001, Johnson filed a postconviction petition, asking the court to vacate his conviction and permit him to withdraw his guilty plea. He challenged the plea on the grounds that he was denied effective assistance of counsel and that the plea agreement was illegal for a number of reasons, including that it violated separation of powers. Johnson argued that the plea agreement gave the state the power to determine his conviction and sentence and therefore improperly invaded the province of the judiciary. Johnson contended that under the Minnesota Constitution, the final disposition of a criminal case is ultimately a matter for the judiciary, not the executive branch. In addition, he asserted that sentencing is also within the sole province of the judiciary. However, according to Johnson, his plea agreement gave the state the sole discretion to determine whether he would be convicted of first-degree or second-degree murder and the sole discretion to determine the actual length of imprisonment.

The state opposed the postconviction petition. The state began its analysis by noting that the plea agreement gave the state the sole discretion to decide whether to move to dismiss amended count one and proceed with sentencing on count two. This discretion was based on the state's determination of whether Johnson provided useful information. The state also noted that the constitutionality of such discretion under the separation of powers doctrine had never been addressed by the Minnesota courts. The state then pointed to *State v. Carriere,* 290 N.W.2d 618 (Minn.1980), for guidance.

*Carriere* involved a situation where the defendant was charged with first-degree murder and the state objected to the defendant's plea to second-degree murder. *Id.* at 619. In *Carriere,* we held that a court does not have the authority to accept a defendant's plea to a lesser charge unless it is satisfied that the state could not withstand a motion to dismiss the first-

degree murder charge at the close of the state's case-in-chief. *Id.* at 620. Applying the holding of *Carriere* to Johnson's plea agreement, the state argued that Johnson's statements clearly implicated him on the first-degree murder charge; thus, if the state objected, the court would not have had the authority to dismiss either the original count one of the indictment or the amended count one of the indictment. Accordingly, no constitutional violation occurred when the district court convicted and sentenced Johnson on amended count one.

The postconviction court denied Johnson's petition on the grounds that the final disposition of the case was not in the hands of the state. The court concluded that the district court did not abrogate its sentencing authority because the court rather than the state dictated the actual length of the imprisonment on amended count one. In support of its argument, the court quoted from the sentencing transcript, where the district court had stated, "[a]nd as for sentence, I am going to sentence you to a mandatory life sentence with a minimum term of imprisonment of 30 years." The postconviction court then stated that "[o]nly if [d]efendant had been sentenced on Count 2 would the possible issue of separation of powers arise." According to the postconviction court, the district court performed its required function of approving a plea agreement and would not have approved the agreement if it was not in the interests of justice or contrary to Johnson's rights. Finally, the court noted that the plea agreement did not cause Johnson any manifest injustice because the agreement had a significant benefit for Johnson. Under the most severe application of the agreement, Johnson was sentenced to life imprisonment and was eligible for release after serving 30

years. Had Johnson been convicted of the original count one, he faced a mandatory life sentence without the possibility of release.

To evaluate whether Johnson's plea agreement violates separation of powers, it is necessary to explain in broad terms the functions of the executive and judicial branches of the Minnesota government. We begin with Article III, Section 1 of the Minnesota Constitution, which provides that:

> The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.

Under our separation of powers doctrine, the power to decide whom to prosecute and what charge to file resides with the executive branch. *See Carriere,* 290 N.W.2d at 620 n. 3. However, under that same doctrine, the final disposition of a criminal case is ultimately a matter for the judiciary. *State v. Krotzer,* 548 N.W.2d 252, 254 (Minn.1996); *State v. Olson,* 325 N.W.2d 13, 18 (Minn.1982) (stating that the imposition of a sentence within the limits prescribed by the legislature is purely a judicial function). Once the legislature has defined the range of punishments for a particular offense, the legislature cannot "condition the imposition of the sentence by the court upon the prior approval of the prosecutor." *Id.* (citing Minn. Const. art. III, § 1). In the context of plea agreements, the separation of powers doctrine gives the state the authority to enter into plea agreements with a defendant. *See State v. Johnson,* 279 Minn. 209,

214–15, 156 N.W.2d 218, 222–23 (1968). However, a district court may, in its discretion, refuse to accept a plea agreement and is not bound by a plea agreement as to any sentence to be imposed. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *State v. Pero*, 590 N.W.2d 319, 323–24 (Minn.1999). *See also* Minn. R.Crim. P. 15.04, subd. 3.

Johnson's plea agreement comports with these broad principles. Here, the facts do not suggest that the state invaded the province of the judiciary. The state, by amending count one, exercised its authority to decide what charges to bring. The state, by entering into a plea agreement with Johnson, exercised its authority to enter into an agreement with a defendant. The district court accepted Johnson's guilty plea, heard argument on whether he had cooperated, convicted him of amended count one, and sentenced him. In doing so, the court exercised its authority to make the final disposition of Johnson's case.

 Johnson's argument that the plea agreement violates separation of powers focuses on the words in the agreement giving the state the "sole discretion" to decide what Johnson would be convicted of and what sentence he would receive. However, this language does not automatically mean that the state has invaded the province of the judiciary. A plea agreement is merely an executory agreement until embodied in the judgment of a court. *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). There is no indication that the court failed to exercise its own discretion in convicting and sentencing Johnson. As noted, the court heard argument on whether Johnson had cooperated, presumably to ensure that a conviction on the amended first count was in the interests of justice. Had the court, as Johnson suggests, abdicated its authority to the state's sole discretion, the court would not have even heard argument regarding Johnson's level of cooperation. Thus, the facts do not indicate that the court failed to make the final disposition of Johnson's case. Although it would make our task easier if the district court explained why it was convicting Johnson on amended count one and why it was giving Johnson this particular sentence, we cannot assume from the court's silence that it was following the state's recommendation without independently exercising judgment and authority. In short, there is no evidence that the plea agreement bound the court's decision-making authority in any way. Further, Johnson benefited from the plea agreement even though he was sentenced on amended count one because if Johnson had been convicted on the original count one, he would have faced life in prison without the possibility of release. There is no evidence that the court was bound by the plea agreement's terms such that it did not exercise its authority to make the final disposition of Johnson's case. Therefore, we hold that Johnson's plea agreement did not violate separation of powers.

Although we conclude that the plea agreement did not violate our constitution, we note that the language in the agreement referring to "the sole discretion" of the state "as to the actual length of imprisonment" has the potential to raise separation of powers concerns. Not only is this language inaccurate regarding the sentencing authority of the state vis-à-vis the court, but it also invites overreaching by the state during the plea agreement process. For these reasons, we discourage the use of similar language in future plea agreements.

Affirmed.