STATE of Minnesota, Respondent,

v.

Dusty Carl KLUG, Appellant.

No. A13–0554.

Court of Appeals of Minnesota.

Nov. 18, 2013.

Lori Swanson, Attorney General, St. Paul, MN; and Christopher D. Cain, Mankato City Attorney, Mankato, MN, for respondent.

Lori M. Michael, Apple Valley, MN, for appellant.

Considered and decided by SMITH, Presiding Judge; WORKE, Judge; and RODENBERG, Judge.

## OPINION

SMITH, Judge.

We affirm appellant's two misdemeanor convictions based on guilty pleas he entered on the day of trial because (1) the district court did not abuse its discretion by declining to accept a plea agreement on the day of trial, (2) the record demonstrates a sufficient factual basis to support appellant's pleas, and (3) appellant did not properly move to withdraw the pleas.

## FACTS

Blue Earth County authorities charged appellant Dusty Karl Klug with misdemeanor domestic assault and misdemeanor violation of a harassment restraining order in October 2011. Over the course of the following year Klug periodically communicated with the prosecutor in an effort to reach a plea agreement. Those negotiations failed and the case was scheduled for trial.[1]

On the morning of trial, with the jury pool waiting for jury selection to begin, the prosecutor offered a plea agreement dismissing one charge in exchange for a guilty plea to the other one. Klug accepted the offer. The district court declined to accept the plea agreement and informed Klug that his options were to plead guilty to both charges or proceed to trial. After consulting with his attorney, Klug entered a guilty plea on the charge of violating a harassment restraining order and an *Alford* plea on the domestic assault charge. Because Klug's attorney had not had an opportunity to prepare a written plea petition, the district court asked the attorney to prepare and file a plea petition immediately following the hearing. Under questioning by the district court, Klug maintained his innocence but acknowledged that there was sufficient evidence for a jury to convict him of both charges.

The district court adjudicated Klug guilty of both charges and sentenced him. After sentencing, the district court told the parties that the members of the jury pool would be brought into the courtroom and informed that their service would not be needed. When the district court expressed frustration about the effect of eleventh-hour negotiations on citizens who have cleared their calendars only to find that their service is not needed, defense counsel commented that Klug could "go forward." The district court responded that it was too late to change course because it had accepted the plea and sentenced Klug. Immediately after the hearing and with the assistance of his attorney, Klug completed and filed a plea petition. In the petition, Klug stated that the factual basis for his guilty plea to the restraining order violation was that at a bar in Mankato he came within five feet of the woman who had obtained the restraining order and had failed to leave the premises.

## ISSUES

I. Did the district court abuse its discretion by declining to accept the plea agreement on the morning of the trial?

---

1. The negotiations also involved conversations with the Martin County prosecutor about charges filed in that county over another alleged violation of the same restraining order. This appeal involves only the Blue Earth County charges.

II. Should appellant be permitted to withdraw his guilty pleas on the ground that they were invalid when entered?

III. Did the district court abuse its discretion by denying postsentence withdrawal of the pleas?

## ANALYSIS

### I.

■ Klug argues that the district court abused its discretion by declining to accept the plea agreement the parties reached on the morning of the trial. Klug asserts that he was unaware that the district court would not accept any plea agreement the day trial was to commence. He alleges that "the [district] court created a manifest injustice by not taking into consideration that he was not aware of the fact that he could have come to court the previous day to discuss negotiations...." He contends that had the parties offered the same plea agreement on the day before the trial, the district court would have accepted it. Klug also asserts a right to continue plea negotiations up to and including the day of trial, and concludes that the district court violated that right. We reject all of these arguments.

■ Under the separation of powers doctrine, the state has the power to enter into plea agreements with a defendant. *Johnson v. State*, 641 N.W.2d 912, 917–18 (Minn.2002). The Minnesota Supreme Court has long supported the common practice of negotiating pleas by recognizing that plea discussions and plea agreements serve the public interest in the effective administration of criminal justice. *See, e.g., State v. Johnson*, 279 Minn. 209, 214, 156 N.W.2d 218, 222 (1968). But we find no authority to support the assertion that a defendant has a right to have a plea agreement accepted. In a case where the state and the defendant reach a negotiated plea agreement, whether to accept that plea agreement is within the discretion of the district court. *Johnson v. State*, 641 N.W.2d at 918; *see also* Minn. R.Crim. P. 15.04, subd. 3(2) (providing that a district court "*may* accept a plea agreement ... when the interest of justice would be served" (emphasis added)). "Neither the constitution nor our Rules of Criminal Procedure give to a criminal defendant an absolute right to have his plea of guilty accepted." *State v. Goulette*, 258 N.W.2d 758, 762 (Minn.1977).

A juror who fails to comply with the jury-service requirement may face misdemeanor charges. *See* Minn.Stat. § 593.42 (2012). For their jury service, jurors receive reimbursement only for expenses of $10 per day (taxable) plus mileage. *See* Minn.Stat. § 593.48 (2012). The burdens on jurors are worthy of consideration by the courts and the parties to litigation. As the district courts of many jurisdictions do, the district court here adhered to its policy of not accepting plea agreements on the day of trial in an effort to reduce juror frustration and to increase trust and confidence in the judicial system.

An appropriate consideration in determining whether to accept a plea agreement is whether the "defendant by pleading has aided in avoiding delay in the disposition of other cases and thereby has contributed to the efficient administration of justice." Minn. R.Crim. P. 15.04, subd. 3(2)(f). The district court's rejection of a plea agreement on the brink of trial speaks to this consideration, and this case provides an example of why such discretion is afforded to the district court. Here, continuing negotiations on the morning the trial was to begin *caused* a delay rather than avoiding it, and contributed to the *in*efficient administration of justice. Delay could have been avoided and justice more efficiently administered if the parties

would have made a plea agreement in advance of trial.

Klug's argument that he should not be penalized for failing to accept a plea offer in advance of trial is unpersuasive. To permit lack of knowledge· to defeat the district court's exercise of its discretion would encourage defendants to claim ignorance, or to willfully remain ignorant about the tribunal before which they are scheduled to appear. Klug's approach would impermissibly place upon the district courts the burden of informing each individual litigant of the court's preferences and practices about any and all areas that are left to the district court and its sound discretion.

■ Klug's assertion that the district court would have accepted the same plea agreement if only the parties had offered it on the day before trial is speculative. But we observe that, had the plea agreement been timely presented and had the district court accepted it, Klug would have had one criminal conviction added to his record rather than two. We are mindful that Klug's failure to inform himself of the district court's practice may have deprived him of his last (and perhaps best) chance to reach such an outcome. But we hold that a district court, as a function of its discretion over whether to accept a plea agreement under Minn. R.Crim. P. 15.04, subd. 3(2), may validly establish and enforce a discretionary practice of declining to accept a plea agreement presented on the day that a trial is to begin.

## II.

■ We next address Klug's argument that he should be permitted to withdraw his pleas on the ground that they were invalid. "Assessing the validity of a plea presents a question of law that we review de novo." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn.2010). A district court must allow a defendant to withdraw a guilty plea "[a]t any time," even after sentencing, if the defendant submits "proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn. R.Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *Raleigh*, 778 N.W.2d at 94. "We have recognized three requirements for a valid plea: it must be accurate, voluntary and intelligent." *State v. Theis*, 742 N.W.2d 643, 646 (Minn.2007) (quotation omitted). A plea that does not satisfy all three of these requirements is constitutionally invalid. *Raleigh*, 778 N.W.2d at 94 (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).)

Klug does not assert that his guilty plea on the charge of violating a harassment restraining order was not accurately made, or that either plea was not intelligently made. Instead, he argues that his *Alford* plea on the domestic assault charge is invalid because it was inaccurate and involuntarily made.

### A.

■ Klug's argument that the *Alford* plea was not accurate fails because the record shows that the plea colloquy established an adequate factual basis.[2] In *Alford*, the United States Supreme Court held that a court does not constitutionally err when it accepts a defendant's guilty plea when the defendant maintains his innocence but clearly expresses his desire to

**2.** We note that *Alford* pleas generally are made in conjunction with a plea agreement. *E.g. Alford*, 400 U.S. at 27–29, 91 S.Ct. at 162–63; *Theis*, 742 N.W.2d at 645; *Goulette*, 258 N.W.2d at 760. Here the defendant only challenges whether there was an adequate factual basis for the plea.

plead guilty based on his own belief that the state has sufficient evidence to convict him. 400 U.S. 25 at 38, 91 S.Ct. at 167–68. Relying on *Alford,* the Minnesota Supreme Court adopted the use of so-called *"Alford* pleas" in *State v. Goulette,* holding that an *Alford* plea satisfies the accuracy requirement "if the court, on the basis of its interrogation of the accused and its analysis of the factual basis offered in support of the plea, reasonably concludes that there is evidence which would support a jury verdict of guilty...." 258 N.W.2d at 760.

During the plea colloquy, Klug was questioned by his counsel and by the district court about the events at the bar and about the evidence the state was prepared to present at trial. The evidence included the testimony of the victim, police officers, and other witnesses. It also included a certified copy of the harassment restraining order. When the district court asked Klug explicitly whether he acknowledged that there was enough evidence that a jury could convict him if they believed the evidence, Klug answered affirmatively. The district court then found, based on the plea colloquy and the court's review of the documentary evidence, that there was a "strong probability" that a jury would convict Klug if it believed the state's evidence.

Based on our de novo review, we conclude that the state's documentary evidence and Klug's testimony during the plea colloquy are adequate to establish a sufficient factual basis for Klug's *Alford* plea. Klug asserts that the factual basis was inadequate because his testimony did not establish that he had the requisite intent for domestic assault. Domestic assault is a general-intent crime, requiring only evidence that a defendant "intended to do the physical act, [not] that the defendant meant to violate the law or cause a particular result." *See State v. Fleck,* 810

N.W.2d 303, 309–10 (Minn.2012) (construing substantively identical statutory language). Although Klug did not testify that he had any particular intent, his *Alford* plea was valid, even without an admission of the intent because Klug believed that the state's evidence was sufficient to convict him of domestic assault. *See State v. Ecker,* 524 N.W.2d 712, 717 (Minn.1994) (finding *Alford* plea valid without defendant's expression of intent where record showed defendant believed state had sufficient evidence to convict); *Goulette,* 258 N.W.2d at 760 (finding *Alford* plea to intentional murder valid even though defendant denied intent).

Klug also argues that the factual basis is inadequate because he denied the allegation that he assaulted S.M. and insisted that he had no physical contact with her. But this response does not undermine the factual basis for his *Alford* plea because it does not rebut the conclusion that he "believed that the state's evidence was sufficient to convict him." *Ecker,* 524 N.W.2d at 717.

**B.**

Klug argues that his guilty pleas were not voluntarily made "because he was denied the right to accept the pretrial plea offer," thereby leaving him "without a remedy other than to either plead to both counts or move forward with his jury trial." This argument is without merit because, as explained above, a defendant has no right to have the district court accept a pretrial plea offer, or even to have the state offer him a plea agreement. Klug's complaint that he was left with only two options—plead guilty to both counts or go to trial—ignores the fact that due process requires only one of those options: a jury trial. *See* U.S. Const. amend. VI; Minn. Const. art. I, § 4. That Klug chose the option to plead guilty instead of pursuing

his due-process right to a jury trial does not make his choice involuntary.

We note that, although the plea colloquy does not include an explicit inquiry into whether Klug was entering his guilty plea voluntarily, it does include questioning about whether Klug had sufficient opportunity to confer with his attorney, whether he was aware of the specific rights he would be waiving by entering a guilty plea, and whether he understood those rights. Any deficiency was cured by Klug's submission of the plea petition, which includes an explicit statement that the defendant is entering the plea "freely and voluntarily." Entry of a guilty plea by petition only, without a court appearance, is common in misdemeanor cases, and the plea petition form in the record follows the language required by the rules. *Cf.* Minn. R.Crim. P. 15, Appd'x B. We therefore conclude that the plea colloquy and the plea petition, when considered together, establish that Klug's pleas were voluntary.

### III.

 Klug argues that the district court erred by failing to permit him to withdraw his guilty pleas after sentencing. "District courts have broad discretion in deciding whether to permit withdrawal of a guilty plea. We will reverse that determination only if it can fairly be concluded that the district court abused its discretion." *Barragan v. State*, 583 N.W.2d 571, 572 (Minn.1998).[3]

Under Minnesota law:

*At any time* the court must allow a defendant to withdraw a guilty plea *upon a timely motion* and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice. Such a motion is not barred solely because it is made after sentencing. If a defendant is allowed to withdraw a plea after sentencing, the court must set aside the judgment and the plea.

Minn. R.Crim. P. 15.05, subd. 1 (emphasis added). The plain language of the rule makes clear that, for the district court to consider withdrawal of a guilty plea, the defendant must move for withdrawal.

The district court record does not include any motion by Klug to withdraw his guilty pleas, and Klug does not direct us to any part of the record that he proposes we should construe as such a motion. Although the state surmises that Klug relies on the last few lines of the transcript of the plea hearing, we find nothing in the record that would suggest that Klug attempted to withdraw his guilty pleas, and conclude that Klug does intend to rely on the passage suggested by the state:

> THE COURT [commenting on the eleventh-hour plea negotiations]: I don't know if it was a change of heart; I don't know if it was a game of chicken; I don't know if it was a lack of communications. But it is unacceptable. That is all.
>
> DEFENSE COUNSEL: I mean, he can go forward.
>
> THE COURT: What's that?

3. Klug's brief cites this passage from *Barragan* to support a claim that the abuse-of-discretion standard applies to our review of a district court's decision whether to accept a plea offer. The brief reads as follows: "Under the abuse of discretion standard a reviewing court, the Court of Appeals can reverse the district court's determination to refuse to withdraw a guilty plea *and to not allow the acceptance of a plea offer* prior to jury trial if the lower court abused their discretion. *Barragan v. State*, 583 N.W.2d 571, 572 (Minn. 1998)." (Emphasis added.) A full reading of *Barragan* reveals that no plea agreement was refused in that case, nor did the court discuss, even in dicta, a standard of review for rejections of plea agreements. We therefore note with concern that Klug's brief presents a patently incorrect statement of the *Barragan* holding.

DEFENSE COUNSEL: I said do you want us to move forward?

THE COURT: Well, I've already accepted a plea and sentenced him. It's too late for that. Alright. That's all.

Klug apparently asks us to construe this exchange as a motion to withdraw his plea and a denial of that "motion." This characterization is not reasonable. Even if it were, the proposition that Klug intended to withdraw his plea is belied by the fact that when the hearing concluded just moments later, Klug completed and filed the formal plea petition, which is in the record. The absence of a motion to withdraw the plea defeats Klug's argument. The district court cannot have erred by failing to grant a motion that was never made. Additionally we note that, even if Klug had moved to withdraw his pleas, the analysis above demonstrates that he could not meet the "manifest injustice" standard that would justify withdrawal.

### DECISION

The district court did not abuse its discretion by refusing to accept a plea agreement offered on the morning of Klug's trial because the district court has broad discretion over whether to accept plea agreements, and the district court's establishment of a policy barring presentation of such agreements on the day of trial was a valid exercise of that discretion. Klug is not entitled to withdraw his guilty pleas on appeal because his pleas were valid when entered, and he therefore cannot meet the "manifest injustice" standard required for withdrawal. Finally, the district court did not err by refusing to allow Klug to withdraw his pleas after sentencing because Klug never moved to withdraw them.

**Affirmed.**