*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1736**

State of Minnesota,
Respondent,

vs.

Michael Lee Everly,
Appellant.

**Filed September 22, 2014
Affirmed
Hooten, Judge**

Dakota County District Court
File No. 19HA-CR-11-3038

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Tori K. Stewart, Assistant County Attorney, Hastings, Minnesota (for respondent)

Mark J. Miller, Mark J. Miller, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Willis, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HOOTEN**, Judge

Appellant challenges the district court's denial of his motion to withdraw his *Alford* plea to the felony offense of engaging in a pattern of stalking conduct. Because the district court did not abuse its discretion in denying the withdrawal of appellant's plea under the manifest-injustice standard or for a fair-and-just reason, we affirm.

## FACTS

Appellant Michael Lee Everly was charged with felony pattern of stalking conduct in violation of Minn. Stat. § 609.749, subd. 5 (2010),[1] in Dakota County District Court. Between the summer of 1994 and December 1995, appellant and the complaining witness, E.L., worked for the same employer.[2] They were friends but were never involved in a romantic relationship and exchanged letters for a short time after their work relationship ended. In 2008, appellant found E.L. on Myspace.com and sent her a message. E.L. responded, and they corresponded through Myspace for a few weeks before E.L. decided to end communication because she was concerned about appellant's behavior. Despite E.L.'s lack of response, appellant continued to send messages to E.L. Apparently out of concern for E.L.'s well-being, appellant asked the police to conduct a welfare check because he had not heard from her.

---

[1] According to the complaint, the contacts began in January 2009 and continued through September 2011. In 2008, section 609.749 proscribed harassment and stalking. The definition of pattern of harassing conduct in the 2008 version of subdivision 5 is substantially similar to the 2010 and current versions of subdivision 5 defining a pattern of stalking conduct.

[2] The facts are taken from the complaint. The district court took judicial notice of the complaint in support of appellant's plea.

E.L. changed her Myspace profile in an effort to stop appellant from contacting her, but appellant mailed letters to her expressing concern that something had happened to her. In April 2009, appellant sent E.L. three certified mail letters to each of the addresses he had for E.L.; she refused the letters. On June 3, 2009, appellant sent a certified mail letter to one of the addresses and wrote a note to the postal employee to record the name of the person who refused delivery and the reason for refusal. On June 27, 2009, E.L. sent appellant a letter asking him to leave her alone, but appellant mailed more letters, expressing concern that the handwriting did not belong to E.L.

On July 6, 2009, E.L. obtained a harassment restraining order (HRO) in Hennepin County precluding appellant from contacting her. Appellant, who lives in California, was in Minnesota at the time the HRO was issued. Before he was served with the HRO, he went to each of the addresses he had for E.L. to determine whether E.L. was still living at the address. When he located E.L.'s current address, he left a note on the door with a message to call him. E.L. called the police, who then notified appellant about the HRO. On July 7, 2009, E.L. received an envelope containing all the letters E.L. had returned to appellant, including ashes from a letter he had burned, and the letters she had written to him in 1995. Appellant was served with the HRO at his residence in California on July 21, 2009.

In January 2010, E.L. received a postcard from appellant, which stated, "Your life is about to get more interesting." On February 8, 2010, a letter E.L. had returned to appellant was mailed back to her in ashes. Appellant also sent postcards threatening court action and threatening to contact the news media. In March 2010, E.L. enrolled in

3

the Safe at Home program with the Minnesota Secretary of State's office.[3]  Appellant continued to mail letters to E.L. at the designated Safe at Home address and to her parents, threatening to have E.L. arrested on identity-theft charges.  Appellant even traveled to Indiana to hand-deliver a package to E.L.'s father.

On July 6, 2011, the date the first HRO expired, appellant hand-delivered an envelope and box to E.L.'s mother in Minnesota; the box contained a cell phone so E.L. could call him.  On July 11, 2011, the same day E.L. applied for a second two-year HRO, she received a "Get Well Soon" card from appellant.  A hearing on the HRO was held on September 6, 2011.  At that time, appellant agreed to talk to police, and admitted delivering a phone to E.L.'s mother so E.L. could call him, traveling to Indiana to visit E.L.'s father and telling him that E.L. looked "yellow," and sending E.L. numerous letters and packages at different addresses in an effort to locate her.  Appellant seems to have been under the impression that the reason E.L. was not responding to his efforts to contact her was that she was not well, her identity had been stolen, or she had been kidnapped because it was unlike her not to respond.  Appellant handed a letter to an attorney at the hearing on the HRO, which said that "unless [E.L.] gets the help she needs, [E.L.] WILL end up being directly responsible for another person's death within ten years."  The letter also demanded that E.L. be fingerprinted.  Officers searched appellant's hotel room pursuant to a warrant and found a map marking addresses associated with E.L., including the address of E.L.'s mother.

---

[3] Under the Safe at Home program, a person attempting to escape from stalking and who is in fear for his or her safety can designate the secretary of state for the receipt of mail and service of process.  Minn. Stat. § 5B.03, subd. 1 (2012).

In response to appellant's conduct, E.L. reported that she had moved numerous times, experienced stress-related health problems, and obtained a stun gun and bat for protection.

Appellant was charged with engaging in a pattern of stalking conduct. He entered an *Alford* plea to the charges of pattern of stalking conduct. Shortly thereafter, he contacted counsel about withdrawing his plea. Counsel filed a motion to withdraw the guilty plea, under both the pre-sentencing fair-and-just standard and the manifest-injustice standard, and a hearing on the motion was held before sentencing. The district court denied the motion, concluding that "[t]he facts contained in the complaint set forth a sufficient basis for the *Alford* plea"; appellant's conduct would cause a reasonable person to "feel frightened, threatened, oppressed, persecuted, or intimidated"[4] and appellant's conduct caused this reaction in E.L.; plea withdrawal "would undermine the integrity and finality of the plea-taking process" and "cause additional undue stress to the victim"; and appellant's plea was knowingly, voluntarily, and intelligently made. This appeal follows.

---

[4] In its order denying appellant's motion to withdraw his plea, the district court cited only Minn. Stat. § 609.749, subd. 1, which defines the gross-misdemeanor crime of stalking for purposes of section 609.749, subdivision 2. Although the order does not refer to the felony charge of a pattern of stalking set forth in subdivision 5, our review of the plea-hearing transcript indicates that appellant pleaded guilty to the felony crime of pattern of stalking conduct, which requires proof that the defendant knows or has reason to know that the conduct will cause the victim "to feel terrorized or to fear bodily harm." We are satisfied that if witnesses testified consistently with their statements in the complaint, the evidence is sufficient to support the inference that appellant knew or had reason to know his conduct would cause E.L. to feel terrorized, particularly after she obtained the HRO and enrolled in the Safe at Home program to conceal her address. *See State v. Franks*, 765 N.W.2d 68, 74 (Minn. 2009) (defining phrase "feel terrorized" as meaning to "feel extreme fear resulting from violence or threats").

**D E C I S I O N**

Appellant argues that the district court failed to apply the fair-and-just standard to his presentencing guilty-plea withdrawal motion. But he also asserts that he "could arguably prevail" under the manifest-injustice standard because his plea was not accurate and intelligent. Because the parties have advanced arguments under both standards, we will consider whether plea withdrawal is warranted under either standard.

"A criminal defendant has no absolute right to withdraw a guilty plea once entered." *Perkins v. State*, 559 N.W.2d 678, 685 (Minn. 1997). "[T]he Minnesota Rules of Criminal Procedure allow a defendant to seek to withdraw a guilty plea in two circumstances." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). First, a court must permit guilty-plea withdrawal at any time, even after sentencing, if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. Second, a district court has discretion to allow a defendant to withdraw a guilty plea before sentencing "if it is fair and just to do so." *Id*., subd. 2. The fair-and-just standard is less demanding than the manifest-injustice standard. *Theis*, 742 N.W.2d at 646. But because plea withdrawal is required if a defendant can show a manifest injustice, we first determine whether the plea was valid under the manifest-injustice standard. *See id.*

The validity of a guilty plea under the manifest-injustice standard is a question of law, which we review de novo. *See State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A manifest injustice exists if a guilty plea is invalid, which means that the plea is not accurate, voluntary, and intelligent. *Theis*, 742 N.W.2d at 646. Appellant contends that his plea was not accurate. "Accuracy requires that the plea be supported by a proper

6

factual basis, that there must be sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted). Appellant entered an *Alford* plea, which permits a defendant to plead guilty while maintaining his innocence, "if the defendant reasonably believes, and the record establishes, the state has sufficient evidence to obtain a conviction." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994) (citing *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970), *quoted in State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977)). The supreme court has noted that "careful scrutiny of the factual basis for the plea is necessary within the context of an *Alford* plea because of the inherent conflict in pleading guilty while maintaining innocence." *Theis*, 742 N.W.2d at 648−49. When an *Alford* plea contains both a strong factual basis and the defendant's agreement that the evidence is sufficient to support a conviction, "the court can ensure that an *Alford* plea meets the accuracy prong." *Id.* at 649.

According to the plea-hearing transcript, appellant's counsel asked if appellant had read the complaint, and appellant responded, "I have." Counsel next asked if he "underst[ood] the exhibits the state would seek to offer and what the witnesses' testimony would be per what they've said earlier." Appellant responded, "Yes." Further, counsel asked appellant, "if [the witnesses] were to come into court and testify consistent with what they've said earlier and the exhibits would have come in, you believe there's a substantial likelihood that the jury would find you guilty beyond a reasonable doubt, correct?" Appellant agreed that was "[c]orrect." The prosecuting attorney also

7

confirmed with appellant that he "underst[ood] all of the contacts with this young woman that underlie that charge," and in looking at the evidence and the statute, there was "a substantial likelihood that [he] would be convicted." The district court took "judicial notice of the facts contained in the complaint . . . to support the *Alford* plea." In the complaint charging appellant with a felony pattern of stalking, appellant made admissions to the police, acknowledging that he mailed and delivered numerous letters and delivered packages to E.L. and her parents. The complaint also reflects that in response to appellant's stalking conduct, E.L. moved numerous times, enrolled in the Safe at Home program, was seen by doctors for stress and ulcers, and obtained a stun gun and a bat due to fear that appellant would "hunt her down."

We note that appellant's admissions on the record are the bare minimum to establish the strong-factual-basis requirement. The supreme court has repeatedly articulated "guiding principles" for a strong factual basis in an *Alford* plea, which include discussing the evidence with the defendant on the record at the plea hearing, either through "interrogation of the defendant about the underlying conduct and the evidence that would likely be presented at trial," introduction of "witness statements or other documents, or the presentation of abbreviated testimony from witnesses likely to testify at trial," or even "a stipulation by both parties to a factual statement in one or more documents submitted to the court at the plea hearing." *Theis*, 742 N.W.2d at 648−49 (internal citations omitted). Nonetheless, a sworn complaint summarizing witness testimony and showing that "in all likelihood" the defendant committed the offense can support a factual basis for the plea. *See Williams v. State*, 760 N.W.2d 8, 13−14 (Minn.

8

App. 2009) (holding statements in complaint combined with defendant's partial recollection provide a strong factual basis), *review denied* (Minn. Apr. 21, 2009). After carefully reviewing the complaint, which contains eight pages detailing appellant's numerous efforts to contact E.L. over a period of years, his admission that he engaged in that conduct, and E.L.'s responses to his efforts, we conclude that the record provides a strong factual basis that appellant engaged in a pattern of stalking conduct. *See* Minn. Stat. § 609.749, subd. 5(a), (b) (defining pattern of stalking conduct as two or more acts within five years, which the actor knows or has reason to know would cause the victim to feel terrorized or to fear bodily harm and which does cause this reaction); Minn. Stat. §§ 609.749, subd. 2(6), .795, subd. 1(3) (2010) (defining crimes of stalking or harassment as including repeatedly mailing or delivering letters or packages).

In seeking to withdraw his plea, appellant argued to the district court that he did not know that his repeated efforts to contact E.L. by mail would cause her to feel terrorized or to fear great bodily harm, as required by section 609.749, subdivision 5(a). Appellant is correct; he did not admit in the factual basis for the plea that he knew or had reason to know his conduct would cause E.L. to feel terrorized or to fear bodily harm. But appellant entered an *Alford* plea, which means he did not have to expressly admit that he had the requisite intent to commit the crime. *Ecker*, 524 N.W.2d at 717. To be valid, an *Alford* plea requires only that the defendant acknowledge his "probable guilt and the likelihood a jury would convict him." *Id.* And based on the record of the plea hearing, appellant expressly acknowledged that there was a "substantial likelihood" that a jury would find him guilty. His plea satisfied the second requirement for a valid *Alford* plea,

i.e., that he agree that the evidence is sufficient to support a conviction, "notwithstanding his claims of innocence." *Theis*, 742 N.W.2d at 649. *See also State v. Klug*, 839 N.W.2d 723, 728 (Minn. App. 2013) (holding *Alford* plea valid without defendant's admission of intent because defendant believed state's evidence was sufficient to convict).

Based on our de novo review, we are satisfied that the allegations in the complaint are sufficient to support appellant's acknowledgement that there was a "substantial likelihood" a jury would convict him of pattern of stalking conduct. *See Theis*, 742 N.W.2d at 650. The complaint details appellant's numerous efforts to contact E.L. by repeatedly mailing and delivering letters and packages to her, going from his home in California to Minnesota to look for her, and personally contacting her parents in Minnesota and Indiana, despite her clear representations that she wanted him to leave her alone. These acts, combined with the increasingly disturbing content of the messages, sending E.L. ashes from burned letters, threatening to contact the police and the media, and stating E.L. needs help or she "WILL end up being directly responsible for another person's death within ten years," support the reasonable inference that appellant knew or had reason to know that his conduct would cause E.L. to feel terrorized or to fear bodily harm. *See Franks*, 765 N.W.2d at 75 (noting in determining whether defendant knew or had reason to know conduct would cause victim to feel terrorized or to fear bodily harm, conduct does not have to involve express threat but may be viewed in context of defendant's relationship with the victim). We, therefore, conclude that appellant has not

10

shown that he is entitled to plea withdrawal as a matter of right under the manifest-injustice standard.[5]

Alternatively, appellant asserts that his reasons for withdrawal concerning the accuracy and intelligence of his plea meet the less stringent fair-and-just standard, and the state did not meet its burden of showing how the prosecution would be prejudiced if appellant was permitted to withdraw his plea. The fair-and-just standard requires the district court to give due consideration to the reasons advanced by the defendant to support withdrawal and to the prejudice withdrawal would cause the state given reliance on the plea. Minn. R. Crim. P. 15.05, subd. 2. The defendant bears the burden of advancing reasons, and the state bears the burden of showing prejudice. *Raleigh*, 778 N.W.2d at 97.

This court has noted that "[a]lthough the line between [the manifest-injustice and fair-and-just] standards is not always precisely applied in caselaw, the standards are distinct." *Anderson v. State*, 746 N.W.2d 901, 910 (Minn. App. 2008). According to the supreme court, the fair-and-just standard "is less demanding than the manifest injustice standard." *Theis*, 742 N.W.2d at 646. The only restriction on the district court's discretion is that withdrawal may not be permitted "for any reason or without good reason" so as to dissuade defendants from using the plea process to continue the trial. *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989). The decision whether to permit

---

[5] In his brief, appellant makes a passing reference to his plea not being intelligently made, but he does not fully analyze this issue or cite any authority to support it. An assertion of error that is not briefed is waived. *State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997), *review denied* (Minn. Aug. 5, 1997).

withdrawal under the fair-and-just standard is within the district court's sound discretion and will be reversed "only in the rare case in which the appellate court can fairly conclude that the [district] court abused its discretion." *State v. Kaiser*, 469 N.W.2d 316, 320 (Minn. 1991). A district court may deny plea withdrawal even when there is no prejudice to the state, "if the defendant fails to advance valid reasons why withdrawal is fair and just." *State v. Cubas*, 838 N.W.2d 220, 224 (Minn. App. 2013), *review denied* (Minn. Dec. 31, 2013).

After carefully reviewing the record, it is apparent that the district court gave "due consideration" to appellant's reasons for seeking withdrawal, but concluded that appellant did not meet his burden of advancing a sufficient reason to support withdrawal. *See Raleigh*, 778 N.W.2d at 97. Because the district court concluded that appellant's reasons were not sufficient to allow plea withdrawal, it was not required to consider whether the state would be prejudiced. *See id.* at 98. We conclude that the district court acted within its discretion in denying plea withdrawal under the fair-and-just standard.

**Affirmed.**