STATE of Minnesota, Respondent,

v.

Joel David THEIS, Appellant.

No. A06–662.

Supreme Court of Minnesota.

Dec. 27, 2007.

Erik Robert Ostlund, Jaspers & Moriarty, P.A., Shakopee, MN, for Appellant.

Michael J. Groh, Assistant Scott County Attorney, Shakopee, MN, Attorney General, St. Paul, MN, for Respondent.

OPINION

GILDEA, Justice.

Appellant Joel David Theis was charged with three counts of felony criminal sexual conduct. Theis entered an *Alford* plea[1] to an amended count of gross misdemeanor criminal sexual conduct. Before sentencing, Theis moved to withdraw his plea. The district court denied the motion, and the court of appeals affirmed. Because we conclude that Theis's *Alford* plea was not accurate, we reverse.

The criminal complaint charged Theis with one count of second-degree criminal sexual conduct and two counts of fourth-degree criminal sexual conduct for allegedly touching his stepdaughter in an inappropriate manner on three specific occasions. On January 17, 2006, the morning of his scheduled trial, Theis agreed to plead guilty to an amended charge of gross misdemeanor fifth-degree criminal sexual conduct in exchange for dismissal of the felony charges and an agreement that no executed jail time would be imposed. Theis signed a plea petition in which he affirmed that he was represented by counsel, had sufficient time to discuss the case and any possible defenses with his attorney, was satisfied that his attorney represented his interests and had fully advised him, and was waiving his trial rights. Although the petition indicated that "I now make no claim that I am innocent," and the record does not specifically identify Theis's plea as an *Alford* plea, the parties agree that the plea entered in this case was such a plea.

During a hearing to determine whether to accept Theis's guilty plea, Theis reviewed the plea petition and agreed that he had gone over the document with his attorney "line-by-line," that he understood the plea negotiation, and that he was entering the plea voluntarily. The district court received the petition and found that Theis understood his rights and made a knowing and voluntary waiver of those rights. During the subsequent questioning by his attorney, Theis acknowledged that he lived with his stepdaughter, understood the charges against him, and had reviewed the evidence with his attorney. The transcript also reflects that the following exchange took place between Theis and his attorney:

Q: And you would agree with me that if this case were to proceed there is a risk to you that you would be found guilty of that fifth degree non-consent sexual contact? You're aware the State has made some what they call Spreigl evidence that he would want admitted as well?

A: Yes.

When defense counsel concluded its questions, the prosecutor asked Theis whether he had "read the statute with [his] attorney" and whether he was "pleading guilty to engaging in nonconsensual sexual contact with [his stepdaughter]." Theis answered both questions in the affirmative. Without any further inquiry, the district court stated that it was "satisfied with the basis for the plea and [would] accept it." The court scheduled a sentencing hearing for March 24, 2006.

The morning after he pleaded guilty, Theis contacted a new attorney to discuss withdrawing his guilty plea. According to Theis, he believed that his attorney was not prepared for trial, he was extremely emotional and uncomfortable with his attorney's representation, and he felt "compelled and coerced" to accept the plea agreement. After taking some additional

---

**1.** *North Carolina v. Alford,* 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (holding that in some circumstances, a court may con-stitutionally accept a defendant's guilty plea even though the defendant maintained his innocence).

time to consider the matter, Theis decided on January 20 to pursue withdrawal of his plea. Theis's new attorney informed the prosecutor and the pre-sentence investigator of the decision on the same day, and filed a motion with the district court on January 31, 2006. The court heard Theis's motion to withdraw the plea on February 7.

On February 13, 2006, the district court denied Theis's motion to withdraw his guilty plea. The court found that Theis's plea was accurate, voluntary, and intelligent, and that the State would be prejudiced if the court allowed withdrawal. Accordingly, the court held that "it would not be fair and just to allow [Theis] to withdraw his plea." On appeal, the court of appeals concluded that the district court did not abuse its discretion in making these findings, and therefore affirmed the denial of Theis's motion to withdraw his guilty plea. We granted Theis's petition for review.

## I.

■ A defendant does not have an absolute right to withdraw a valid guilty plea. *State v. Farnsworth*, 738 N.W.2d 364, 371 (Minn.2007). But the Minnesota Rules of Criminal Procedure allow a defendant to seek to withdraw a guilty plea in two circumstances. First, a court must allow a defendant to withdraw a guilty plea, even after sentencing, if "withdrawal is necessary to correct a manifest injustice." Minn. R.Crim. P. 15.05, subd. 1. We have recognized that manifest injustice exists where a guilty plea is invalid. *Butala v. State*, 664 N.W.2d 333, 339 (Minn.2003) ("The involuntariness of a guilty plea constitutes such a manifest injustice as to entitle a defendant to withdraw his plea." (internal quotation omitted)); *Perkins v. State*, 559 N.W.2d 678, 688 (Minn.1997) ("Manifest injustice occurs if a guilty plea is not accurate, voluntary, and intelligent, and thus the plea may be withdrawn.").

■ Second, the district court may allow a defendant to withdraw a plea before sentencing if the defendant proves that "it is fair and just to do so." Minn. R.Crim. P. 15.05, subd. 2; *see also Kim v. State*, 434 N.W.2d 263, 266 (Minn.1989). Although this standard is less demanding than the manifest injustice standard, it does not allow a defendant to withdraw a guilty plea "for simply any reason." *Farnsworth*, 738 N.W.2d at 372.

Theis argues that withdrawal should have been permitted under the fair-and-just standard of Rule 15.05, subdivision 2. Specifically, he argues that he should have been allowed to withdraw his plea because it was not valid when entered, and that therefore it is fair and just to permit him to withdraw the plea. We have recognized three requirements for a valid plea: "it must be accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn.1994); *see also State v. Trott*, 338 N.W.2d 248, 251 (Minn.1983). If a plea fails to meet any of these requirements, it is invalid. *See Ecker*, 524 N.W.2d at 716.

Theis bases his argument on the fair-and-just standard of subdivision 2. But if a review of the record demonstrates that Theis's plea was invalid, we need not reach the question of whether withdrawal may have been authorized under the discretionary fair-and-just standard because the manifest injustice standard of subdivision 1 requires withdrawal where a plea is invalid. *See Hirt v. State*, 298 Minn. 553, 557, 214 N.W.2d 778, 782 (1974) ("[A] defendant who can show manifest injustice is entitled as a matter of right to withdraw his plea of guilty"). We therefore examine as a threshold matter whether Theis's plea was invalid, i.e., whether it was accurate, voluntary and intelligent.

## A.

■ We turn first to the accuracy requirement. "A proper factual basis must be established for a guilty plea to be accurate." *Ecker*, 524 N.W.2d at 716. Theis argues that the factual basis for his plea was not properly established, and the plea was therefore inaccurate. The State, in essence, responds that the district court's finding that Theis's plea was accurate is supported by the testimony and the documents in the court file; that the district court is not required to expressly state the source of the factual basis; that there is a sufficient factual basis for an *Alford* plea if the facts in the complaint could satisfy the elements of the charge, and that this requirement is satisfied in the present case. Because this case involves the use of an *Alford* plea, we look to *Alford* and our own jurisprudence regarding such pleas to determine whether Theis's plea was accurate.

In *North Carolina v. Alford*, the United States Supreme Court held that it was constitutional for a court to accept a defendant's guilty plea, even though the defendant maintained his innocence, where the State demonstrated "a strong factual basis for the plea" and the defendant clearly expressed his desire to enter the plea based on his belief that the State's evidence would be sufficient to convict him. 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The Supreme Court recognized that convictions based on guilty pleas are generally "justified by the defendant's admission of guilt and by the defendant's knowing and voluntary waiver of a trial." *State v. Goulette*, 258 N.W.2d 758, 760 (Minn.1977) (citing *Alford*, 400 U.S. at 25, 91 S.Ct. 160). But there are also some

circumstances in which a defendant could decide that a guilty plea is the best available course of action despite his inability to admit guilt or his affirmative belief in his innocence. *See Alford*, 400 U.S. at 37–38, 91 S.Ct. 160; *Goulette*, 258 N.W.2d at 761. Acknowledging this fact, the Supreme Court held that the acceptance of Alford's guilty plea did not violate the federal Constitution because of the "strong factual basis for the plea demonstrated by the State" in that case and because of Alford's "clearly expressed desire to enter [the plea] despite his professed belief in his innocence." *Alford*, 400 U.S. at 38, 91 S.Ct. 160.

In *State v. Goulette*, we held that state law also permits the acceptance of *Alford* pleas "if the court, on the basis of its interrogation of the accused and its analysis of the factual basis offered in support of the plea, reasonably concludes that there is evidence which would support a jury verdict of guilty and that the plea is voluntarily, knowingly, and understandingly entered." 258 N.W.2d at 760. The factual basis offered in *Goulette* is instructive. It "consisted of a recitation by defense counsel, in summary form, of some of the key evidence" that would be offered against the defendant at trial. *Id.* Although not discussed in our opinion, the record in *Goulette* reflects that this "summary" included defense counsel's review of the anticipated testimony of 10 witnesses that the State would call to testify against Goulette at trial. Defense counsel also reminded Goulette of his statement to the police, and Goulette reaffirmed that statement.[2] After this on-the-record discus-

---

2. Although we concluded that this procedure was sufficient to establish the factual basis, we noted:

> [A] better practice would be the introduction, by the prosecutor, of statements of witnesses or other items from his file which would aid the court in its determination.

> In appropriate cases, the prosecutor might even consider calling some of the state's witnesses for the purpose of giving a shortened version of what their testimony would be were the case to go to trial.

*Goulette*, 258 N.W.2d at 761.

sion, defense counsel asked whether Goulette agreed that "in view of all of the circumstances, including your own confession, the outcome or the chances of a successful outcome are very slim?" Goulette answered "Yes."

Based on that record, we concluded that even though Goulette "denied any foreknowledge of the shooting and denied any intent to assist [the accomplice] in it," his plea to intentional second-degree murder was valid. 258 N.W.2d at 760. In reaching this conclusion, however, we specifically noted that "[w]hen a defendant pleads guilty but at the same time denies that he is in fact guilty, the rationality of the defendant's decision is immediately called into question." *Id.* at 761. Accordingly, we cautioned that the court should not "cavalierly accept" an *Alford* plea, that such pleas should only be accepted if they are "voluntary and represent[ ] a knowing and intelligent choice of the alternative courses of action available," and that the factual basis inquiry is "essential to a determination of this issue." *Id.*

We reaffirmed the importance of the factual basis inquiry when accepting *Alford* pleas in *State v. Ecker.* In that case, the defendant pleaded guilty to murder and robbery despite claiming that he did not remember shooting the victim or the robbery. *Ecker,* 524 N.W.2d at 715. As part of the factual basis for the plea, the record in *Ecker* discloses that defense counsel reviewed with Ecker the evidence the State would offer against him at trial. Indeed, we noted that both defense counsel and the prosecutor questioned the defendant "extensively during his guilty plea." *Id.* The record reflects that during the plea hearing defense counsel reviewed the evidence in detail, and that this review

included discussion of Ecker's confession to police, a witness's identification of Ecker, a video tape showing Ecker pointing a pistol at some people in the store where the murder was committed, and the murder weapon, which was found in a car that Ecker had been in together with money taken from the store. After reviewing this evidence, defense counsel asked Ecker if he would agree "that if a jury were to hear all of that evidence and put it together, they would undoubtedly come to the conclusion that you were the person who walked in the store and shot [the victim]." Ecker responded "Yes." Defense counsel later re-posed the question, and Ecker once again confirmed that "yes," he was "sure" that the jury would find him guilty.

After sentencing, Ecker moved to withdraw his plea. We affirmed the postconviction court's denial of the motion, holding that the facts of the case did not meet the manifest injustice standard required for withdrawal of a plea after sentence. 524 N.W.2d at 717. In our analysis, we stated that a proper factual basis must be established to satisfy the accuracy requirement for a valid plea, but that the district court need not interrogate the defendant to establish the factual basis "if defense counsel and the prosecutor have established an adequate factual basis." *Id.* at 716.[3] We also advised that the record should explicitly indicate that the defendant is entering an *Alford* plea, and again reaffirmed that the court should inquire into the defendant's decision to plead guilty despite maintaining his innocence. *Id.* at 717.

 Several guiding principles are drawn from these cases. The cases reflect that careful scrutiny of the factual basis for the plea is necessary within the context

---

**3.** We specifically said: "the trial judge should personally interrogate the defendant regarding why the defendant is willing to plead guilty, unless the court is reasonably satisfied defense counsel and the prosecution have established an adequate factual basis." *Ecker,* 524 N.W.2d at 717.

of an *Alford* plea because of the inherent conflict in pleading guilty while maintaining innocence. An *Alford* plea is not supported by the defendant's admission of guilt, and is actually contradicted by his claim of innocence; precedent therefore requires a strong factual basis for an *Alford* plea. *See Alford,* 400 U.S. at 37–38, 91 S.Ct. 160 (relying on "strong factual basis for the plea," which was sufficient to "substantially negate[ ] [Alford's] claim of innocence," in affirming the acceptance of the plea). In the context of an *Alford* plea, our jurisprudence indicates that the better practice is for the factual basis to be based on evidence discussed with the defendant on the record at the plea hearing, as it was in both *Goulette* and *Ecker.* This discussion may occur through an interrogation of the defendant about the underlying conduct and the evidence that would likely be presented at trial, *see Ecker,* 524 N.W.2d at 715; the introduction at the plea hearing of witness statements or other documents, or the presentation of abbreviated testimony from witnesses likely to testify at trial, *see Goulette,* 258 N.W.2d at 761; or a stipulation by both parties to a factual statement in one or more documents submitted to the court at the plea hearing.

■■ In addition, the court must be able to determine that the defendant, despite maintaining his innocence, agrees that evidence the State is likely to offer at trial is sufficient to convict. *Ecker,* 524 N.W.2d at 717 (allowing an *Alford* plea "so long as [the defendant] believed the State's evidence was sufficient to convict him"). We have recognized that the "main purpose of the accuracy requirement [of a valid plea] is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial." *Trott,* 338 N.W.2d at 251. Within the context of an *Alford* plea, where the defendant is maintaining his innocence, the defendant's ac-

knowledgement that the State's evidence is sufficient to convict is critical to the court's ability to serve the protective purpose of the accuracy requirement. The best practice for ensuring this protection is to have the defendant specifically acknowledge on the record at the plea hearing that the evidence the State would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty of the offense to which he is pleading guilty, as was done in both *Goulette* and *Ecker.*

■ The strong factual basis and the defendant's agreement that the evidence is sufficient to support his conviction provide the court with a basis to independently conclude that there is a *strong* probability that the defendant would be found guilty of the charge to which he pleaded guilty, notwithstanding his claims of innocence. *See Goulette,* 258 N.W.2d at 758. In such a circumstance, the court can ensure that an *Alford* plea meets the accuracy prong.

### B.

■ The district court found that Theis's plea was accurate. The court acknowledged that within the context of an *Alford* plea, "the record must establish that the defendant believed that the State's evidence would be sufficient to convict him and the record must also support that the State's evidence was adequate for obtaining a conviction." In concluding that this standard was met, the court cited Theis's acknowledgement that there was a "risk" that he could be convicted if the matter proceeded to trial, his agreement that he had read the statute with his attorney, and his statement that he was pleading guilty to engaging in nonconsensual sexual contact with the alleged victim.

The evidence the district court cited does not satisfy the accuracy standard we require in the context of an *Alford* plea.

Theis did not acknowledge, as did the defendants in *Goulette* and *Ecker*, that evidence described at the plea hearing would be sufficient for a jury to find him guilty beyond a reasonable doubt of fifth-degree criminal sexual conduct. During the plea hearing, Theis answered "Yes" to the following question from his attorney:

And you would agree with me that if this case were to proceed there is a risk to you that you would be found guilty of that fifth degree non-consent sexual contact? You're aware the State has made some what they call Spreigl evidence that he would want admitted as well?

At most, Theis's answer to this question acknowledged that there was a mere "risk" that he would be found guilty of the crime to which he was pleading guilty, and even that inadequate acknowledgement is ambiguous because the answer was given to a compound question. In the context of an *Alford* plea, where a defendant maintains his innocence, the defendant's acknowledgement that there is a risk that he could be convicted does not meet the standard for accuracy that we applied in *Goulette* and *Ecker*.

In addition, Theis's acknowledgement in response to the prosecutor's question that he read the statute with his lawyer and was pleading guilty to the crime does not address any of the facts regarding the underlying criminal conduct. This acknowledgement therefore does not provide a basis for the court to conclude that Theis was not pleading guilty to a crime that is "a more serious offense than he could be convicted of" at trial. *Trott*, 338 N.W.2d at 251.

The allegations of the complaint in this case also do not satisfy the protective function of the accuracy requirement within the context of an *Alford* plea. Theis, who

maintained his innocence, did nothing at the plea hearing to affirm that the evidence supporting these allegations would lead a jury to find him guilty of fifth-degree criminal sexual conduct. And the record contains no other basis upon which the district court could make this conclusion in the face of Theis's claim of innocence. We therefore conclude that the district court erred in finding that Theis's plea was accurate.[4]

## II.

■ Having concluded that Theis's plea was not accurate, we examine next whether Theis should have been permitted to withdraw his plea. As noted above, we have required that pleas be accurate, voluntary and intelligent before they are valid. *Ecker*, 524 N.W.2d at 716. If a plea fails to meet any one of these requirements, it is invalid. *See id.* We have further recognized that a manifest injustice exists where a guilty plea is invalid. *Butala*, 664 N.W.2d at 339; *Perkins*, 559 N.W.2d at 688. In this case, Theis's plea was not accurate when entered. Because Theis's plea was not valid, a manifest injustice would occur if the plea were not withdrawn. When manifest injustice exists, Minn. R.Crim. P. 15.05, subd. 1 requires that withdrawal of the plea be allowed. *See also Hirt*, 298 Minn. at 557, 214 N.W.2d at 782.

The State argues and the district court found that the State will suffer some prejudice from the withdrawal of Theis's guilty plea based on the delay in the trial. We are also cognizant of the highly-sensitive nature of the alleged crimes and that the youth of the alleged victim make her testimony difficult. *See Kim*, 434 N.W.2d at 267 (permitting consideration of the al-

---

**4.** Because of our conclusion that the district court erred on the accuracy prong, we do not examine the findings on the voluntary and

intelligent prongs, which would also have to be met in order for the plea to be valid.

leged victim's interests as prejudice to the State). But because Theis's *Alford* plea was not accurate, and was therefore invalid, we hold that withdrawal of that plea must be allowed under Minn. R.Crim. P. 15.05, subd. 1.

Accordingly, we reverse the district court's denial of Theis's motion to withdraw his guilty plea and remand for further proceedings.

Reversed and remanded.