*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2087**

Ofiong Louis Sanders, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 13, 2015
Affirmed
Chutich, Judge**

Dakota County District Court
File No. 19HA-CR-12-910

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Kathryn J. Lockwood, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Amy A. Schaffer, Assistant County Attorney, Hastings, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Connolly, Judge; and Kirk, Judge.

**CHUTICH**, Judge

Appellant challenges the denial of his postconviction petition seeking to withdraw his guilty plea to attempted first-degree burglary. He argues that the factual basis for his *Alford* plea was not accurate because it failed to establish the element of intent. Because the factual basis was sufficient, we affirm.

**FACTS**

On March 13, 2012, the state filed a complaint charging appellant Ofiong Louis Sanders with one count of first-degree burglary and two counts of interference with privacy. The complaint alleged that on January 26, 2012, shortly before 6:00 a.m., a woman heard movement in the living room of her apartment. She got out of bed and entered the living room, where she saw an intruder, later identified as Sanders, wearing a mask and staring at her. She screamed and woke her boyfriend, who ran into the living room and saw, from the second-floor balcony, Sanders walking with a slight limp in the middle of the street. After the couple called the police, photographs were taken of a distinct shoe print left on the balcony railing and in the snow underneath the balcony.

The complaint further alleged that the interference-with-privacy events occurred on two separate occasions when Sanders was seen standing outside the ground-floor bedroom window of another couple's apartment. On February 8, 2012, a woman and her husband reported that a man was standing outside their bedroom window. On March 7, 2012, the couple again reported that the same man, later identified as Sanders, was standing outside of their bedroom window. After seeing Sanders, the husband grabbed a

baseball bat and went outside. He saw Sanders drive his car around the apartment building and park the car on the other side of the building. The husband confronted Sanders about standing outside of the bedroom window, but Sanders said that he was just getting home from work and did not know what the husband was talking about. Sanders then entered the apartment building. Sanders was later found to be on the lease with his parents for an apartment within the same building. The husband also recorded the license plate number of the car. The car was registered to Sanders's father. Police photographed shoeprints in the snow outside of the couple's bedroom window. After executing a search warrant, officers found shoes in Sanders's bedroom of the same size and tread pattern as the shoeprints left in the snow after the burglary and interference-with-privacy offenses.

On August 31, 2012, Sanders agreed to enter an *Alford* plea of guilty to an amended charge of attempted first-degree burglary in exchange for the state's dismissal of the interference-with-privacy charges and an agreed-upon prison term. On the record, the prosecutor asked Sanders if he had reviewed the reports and evidence against him, and Sanders acknowledged that he had. The prosecutor set forth the underlying facts for the burglary and interference-with-privacy charges, explaining the testimony and evidence that the state would present to the jury at trial. After each factual description, Sanders acknowledged that the testimony and evidence described would be presented to the jury. The prosecutor then inquired about Sanders's previous burglary convictions and

asked Sanders if he understood that evidence of the convictions could be presented to the jury. Sanders responded "yes." The prosecutor concluded with the following:

> [Prosecutor]: So, Mr. Sanders, with the evidence that's contained in the case that you've gone over with your attorney, the evidence that we just discussed, would you agree with me that there's a substantial likelihood that if the jury heard that evidence and either heard some of your prior record, or maybe they don't, that's kind of an unknown at this point, that there's a substantial likelihood that you would be convicted at trial of attempted burglary in the first degree?
>
> [Sanders]: You never know who's going to sit on the jury.
>
> [Prosecutor]: So you would agree with me then?
>
> [Sanders]: I would agree with you then.

The district court asked Sanders if he had enough time to consider the agreement and if he was pleading guilty to take advantage of the agreement. Sanders agreed with both inquiries. The district court then asked Sanders, "And you feel like you understand what *Alford* means and that this is the testimony the state would present? Not that you necessarily agree with it, but that there's a substantial likelihood if all that testimony came in, that a jury would find you guilty of the offense?" Sanders replied, "Yes, ma'am." After asking Sanders whether he had any questions for the court, his attorney, or the prosecutor, the district court accepted Sanders's guilty plea and sentenced him to the agreed-upon prison term.

Sanders filed a postconviction petition on August 26, 2014, seeking to withdraw his plea. Sanders argued that his guilty plea was invalid because the record contained no reference to the intent element required for attempted first-degree burglary. The district

4

court denied postconviction relief, determining that a strong factual basis and Sanders's agreement that the evidence was sufficient to establish his conviction supported the validity and accuracy of his *Alford* plea. Sanders appealed.

## D E C I S I O N

Sanders challenges the district court's denial of his postconviction petition to withdraw his *Alford* plea. A defendant may withdraw a guilty plea at any time if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice is established if a guilty plea is invalid, which means that the plea is not "accurate, voluntary and intelligent." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007) (quotation omitted). While we review the district court's ultimate decision to deny a postconviction petition for an abuse of discretion, the validity of a guilty plea is a question of law that we review de novo. *Barnslater v. State*, 805 N.W.2d 910, 913 (Minn. App. 2011).

Sanders challenges only the accuracy of his *Alford* plea, arguing that it lacked an adequate factual basis. The requirement that a plea be accurate "protects a defendant from pleading guilty to a more serious offense than that for which he could be convicted if he insisted on his right to trial." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). "Accuracy requires that the plea be supported by a proper factual basis, that there must be sufficient facts on the record to support a conclusion that [the] defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted). "[C]areful scrutiny of the factual basis for the plea is necessary within the context of an *Alford* plea because of the inherent conflict in

5

pleading guilty while maintaining innocence." *Theis*, 742 N.W.2d at 648-49. In addition to the strong-factual-basis requirement, an *Alford* plea satisfies the accuracy requirement when the defendant agrees that the evidence is sufficient to support a conviction. *Id.* at 649.

Sanders pleaded guilty to one count of attempted first-degree burglary, in violation of Minnesota Statutes section 609.582, subdivision 1(a) (2012). The statute provides that "[w]hoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building," commits first-degree burglary if "the building is a dwelling and another person, not an accomplice, is present in it when the burglar enters or at any time while the burglar is in the building." *Id.* A person is guilty of an attempt to commit a crime if "with intent to commit a crime," that person takes "a substantial step toward . . . the commission of the crime." Minn. Stat. § 609.17, subd. 1 (2012).

Sanders asserts that the factual basis for his plea was inadequate because his testimony did not establish that he had the requisite intent to commit a burglary or that he made a substantial step toward committing a burglary. Minnesota law, however, does not require an expression of intent where the record establishes that a defendant acknowledged that the state had sufficient evidence to convict the defendant of the charged crime. *See State v. Ecker*, 524 N.W.2d 712, 717 (Minn. 1994).

In *Ecker*, the appellant challenged his guilty plea to first-degree murder, arguing that it was inaccurate and lacked a sufficient factual basis because he failed to acknowledge an intent to kill during his plea. *Id.* at 716. The supreme court concluded

6

that the appellant entered a valid *Alford* plea and explained that "the primary problem with [the appellant's] argument is that *Alford* . . . and the cases that have followed, allow [the appellant] to plead guilty without expressing the requisite intent so long as he believed the state's evidence was sufficient to convict him." *Id.* at 717.

While Sanders acknowledges the finding in *Ecker*, he nonetheless argues that nothing in the record shows what evidence the state would present regarding the element of intent. He contends that the lack of evidence and the failure to mention intent during the plea hearing demonstrates that Sanders's *Alford* plea was inaccurate. The record, however, supports a finding that the state provided an adequate factual basis. During the plea colloquy, the prosecutor questioned Sanders about the events of January 26, 2012, and about the evidence the state was prepared to present at trial. The evidence included the testimony of the victims, police officers, and representatives of the Minnesota Bureau of Criminal Apprehension. It also included evidence of Sanders's criminal history involving several burglary convictions. When the district court asked Sanders if he understood what testimony the state would present and if he believed that there was a substantial likelihood that a jury would find him guilty of attempted first-degree burglary, Sanders answered in the affirmative.

Even though Sanders was not specifically questioned about his intent to commit attempted first-degree burglary, the record shows that he pleaded guilty to the crime based on his admission that a substantial likelihood existed that a jury would convict him.

Accordingly, we conclude that an adequate factual basis was established in the record to support Sanders's plea of guilty to attempted first-degree burglary.

**Affirmed.**