*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2046**

State of Minnesota,
Respondent,

vs.

Andrew Edward Martin,
Appellant.

**Filed July 20, 2015
Affirmed
Larkin, Judge**

Beltrami County District Court
File No. 04-CR-14-1208

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Annie P. Claesson-Huseby, Beltrami County Attorney, David P. Frank, Assistant County Attorney, Bemidji, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Frank Richard Gallo, Jr., Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges the validity of his *Alford* plea to second-degree assault, arguing that the record does not establish an adequate factual basis for his plea. Because the record evidence would support a jury verdict of guilty, we affirm.

## DECISION

Appellant Andrew Edward Martin challenges the validity of his *Alford* plea to one count of second-degree assault, arguing that he must be allowed to withdraw his plea because it lacks an adequate factual basis.

The validity of a guilty plea is an issue that may be raised in a direct appeal. *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). To be constitutionally valid, a guilty plea must be "accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). "A defendant bears the burden of showing his plea was invalid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). The validity of a plea is a question of law that we review de novo. *Id.* "If the factual basis of a guilty plea is challenged on direct appeal, this court conducts a *de novo* review by reviewing the record of the plea hearing, which should reveal the factual basis." *State v. Johnson*, ___ N.W.2d ___, ___, No. A14-1605, slip op. at 8 (Minn. App. June 29, 2015).

A defendant "may plead guilty to an offense, even though the defendant maintains his or her innocence, if the defendant reasonably believes, and the record establishes, the state has sufficient evidence to obtain a conviction." *Ecker*, 524 N.W.2d at 716 (citing *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970)). "[C]areful

2

scrutiny of the factual basis for the plea is necessary within the context of an *Alford* plea because of the inherent conflict in pleading guilty while maintaining innocence." *State v. Theis*, 742 N.W.2d 643, 648-49 (Minn. 2007). An *Alford* plea is constitutionally acceptable when "the State demonstrate[s] a strong factual basis for the plea and the defendant clearly expresse[s] his desire to enter the plea based on his belief that the State's evidence would be sufficient to convict him." *Id.* at 647 (quotation omitted). A district court may accept an *Alford* plea "if the court, on the basis of its interrogation of the accused and its analysis of the factual basis offered in support of the plea, reasonably concludes that there is evidence which would support a jury verdict of guilty and that the plea is voluntarily, knowingly, and understandingly entered." *Id.* (quotation omitted).

The supreme court has emphasized that

> the main purpose of the accuracy requirement of a valid plea is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial. Within the context of an *Alford* plea, where the defendant is maintaining his innocence, the defendant's acknowledgement that the State's evidence is sufficient to convict is critical to the court's ability to serve the protective purpose of the accuracy requirement. The best practice for ensuring this protection is to have the defendant specifically acknowledge on the record at the plea hearing that the evidence the State would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty of the offense to which he is pleading guilty.

*Id.* at 649 (quotation and citation omitted).

Martin pleaded guilty to second-degree assault under Minn. Stat. § 609.222, subd. 1 (2012), which provides that "[w]hoever assaults another with a dangerous

3

weapon may be sentenced to imprisonment." Martin does not contest that he possessed a shotgun during the incident underlying the charged offense or that the shotgun qualifies as a dangerous weapon. *See* Minn. Stat. § 609.02, subd. 6 (2012) (stating that "[d]angerous weapon" includes "any firearm"). His argument concerns whether the state's evidence is sufficient to prove that he committed an assault. "Assault" is defined as "(1) an act done with intent to cause fear in another of immediate bodily harm or death" or "(2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2012). The state did not allege that Martin inflicted bodily harm; his conviction is based on his intent to cause fear in another of immediate bodily harm or death.

"[B]ecause intent is a state of mind, it is generally proved by inferences drawn from a person's words or actions in light of all the surrounding circumstances." *State v. Thompson*, 544 N.W.2d 8, 11 (Minn. 1996). Intent to cause fear of immediate bodily harm may be shown by a defendant's words and actions. *See State v. Kastner*, 429 N.W.2d 274, 275 (Minn. App. 1988) ("[Defendant's] intent to put [the victim] in fear of immediate bodily harm was evident from both her words and actions."), *review denied* (Minn. Nov. 16, 1988). It may be inferred that "a person intends the natural and probable consequences of his actions." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997).

Martin argues that the state did not offer or elicit evidence showing that he "engaged in assault-fear by use of a dangerous weapon." He also argues that his "mere possession" of the shotgun during the charged offense "is insufficient to support a finding of assault-fear." The record does not support Martin's arguments.

4

During his *Alford* plea, Martin agreed that the district court would receive evidence from the state as support for his guilty plea. Specifically, he acknowledged that the state would supplement the record of his guilty plea with police reports and statements from the victims. Martin stated that he had enough time to discuss, and did discuss, that evidence with his defense attorney. Martin acknowledged that the evidence would show that he and another person broke into a residence, that he was carrying a shotgun, that he pointed the shotgun at two individuals inside the home, and that he took money and property from the individuals. Martin agreed that if the victims testified consistently with their statements to police, it was substantially likely that a jury would find him guilty of second-degree assault.

As support for Martin's *Alford* plea, the state submitted an amended complaint, which alleges that Martin "did assault another, to-wit: M.M., with a dangerous weapon (12 gauge shotgun)." The state also submitted an incident report from the Bemidji Police Department, several supplemental police reports, a search warrant and application, an inventory receipt, and photographs that were taken during execution of the search warrant. According to those documents, Martin and his accomplice pushed their way into M.M.'s home in Bemidji. Martin was armed with a shotgun and confronted M.M. in a bedroom, while Martin's accomplice pushed another individual, N.B., to the ground and told him to lay still. Martin pushed M.M. down and told him to lie on the ground and to not move. Martin ordered M.M. not to look at him, told M.M. not to make Martin hurt him, and repeatedly asked M.M. where his wallet was. While armed with the shotgun, Martin took $45 in cash, a cell phone, and a computer from M.M. According to a police

5

report admitted in support of Martin's plea, M.M. identified Martin from a photograph "as the person who had entered his home and pointed a shotgun at him demanding that he turn over property to him."

In sum, the record evidence shows that appellant forced himself into M.M.'s home while visibly holding a shotgun, ordered M.M. to lie on the ground, made a statement indicating that he was willing and able to hurt M.M., and took M.M.'s personal property. The record evidence also shows that M.M. told the police that Martin pointed the shotgun at him. "Pointing a weapon at . . . another person has been held to supply the requisite intent to cause fear." *In re Welfare of T.N.Y.*, 632 N.W.2d 765, 770 (Minn. App. 2001). Moreover, the natural and probable consequence of Martin's words and actions was to cause M.M. to fear that Martin would use the shotgun to inflict immediate bodily harm or death. Not surprisingly, N.B. told the police that he "feared for his and [M.M.'s] life" and "prayed that he would not hear the gunshot go off as [Martin and his accomplice] were leaving."

Based on our de novo review, we conclude that the record shows that Martin did not merely possess the shotgun. Instead, Martin used the shotgun to frighten M.M. into submission so he could take M.M.'s property. As Martin acknowledged during his plea hearing, the record evidence would support a jury verdict of guilty. The factual basis for Martin's *Alford* plea therefore is adequate. Because Martin has not met his burden of showing that his plea was invalid, we affirm.

**Affirmed.**

6