*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0878**
**A15-1086**

State of Minnesota,
Respondent,

vs.

Paul Michael Baumchen,
Appellant.

**Filed May 9, 2016**
**Affirmed**
**Connolly, Judge**

St. Louis County District Court
File Nos. 69HI-CR-14-590; 69HI-FA-321; 69VI-CR-14-1460

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark Rubin, St. Louis County Attorney, Brian D. Simonson, Assistant County Attorney, Hibbing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, Lauren Schoeberl (certified student attorney), St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges the denial of his motion to withdraw his *Alford* pleas. Because the district court did not abuse its discretion in denying appellant's motion to withdraw, we affirm.[1]

**FACTS**

In 2014, appellant Paul Baumchen was charged with felony violation of an Order for Protection (OFP) and with gross misdemeanor violation of a Domestic Abuse No Contact Order (DANCO) in Virginia, MN (the Virginia charges), and with felony domestic assault, felony terroristic threats, and gross misdemeanor interference with an emergency call in Hibbing, MN (the Hibbing charges).

At the plea hearing, appellant entered an *Alford* plea on the Virginia charges to the gross misdemeanor violation of a DANCO, with dismissal of the felony violation of the OFP charge; on the Hibbing charges, he entered an *Alford* plea to misdemeanor assault in the fifth degree (a lesser-included offense of the felony domestic assault charge) and to gross misdemeanor interference with an emergency call, with dismissal of the felony terroristic threats charge. Thus, as a result of the plea agreement, appellant was sentenced on two gross misdemeanors and a misdemeanor, rather than on the three felonies and two gross misdemeanors with which he had been charged.

---

[1] Although this appeal was consolidated with an appeal from an order revoking appellant's probation that was filed two months later, neither party addressed the probation-revocation issue.

Between the plea hearing and the sentencing hearing, appellant moved to withdraw his *Alford* pleas. At the start of the sentencing hearing, his motion was argued and denied. He challenges that denial, arguing that the district court abused its discretion in denying his motions to withdraw because his pleas were not accurate.

**D E C I S I O N**

Appellant moved to withdraw his guilty pleas before he was sentenced. In that situation, the district court must consider both the reasons for withdrawal and any prejudice that withdrawal could cause the State. *State v. Raleigh*, 778 N.W.2d 90, 97 (Minn. 2010). This court "review[s] a district court's decision to deny a withdrawal motion for abuse of discretion, reversing only in the 'rare case.'" *Id.* (quoting *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989). A valid guilty plea must be accurate, voluntary, and intelligent. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007).

There are two specific requirements for an *Alford* plea: first, "a strong factual basis," and second, "the defendant's acknowledgment that the State's evidence is sufficient to convict." *Id.* at 649. As to the first requirement,

> the better practice is for the factual basis to be based on evidence discussed with the defendant on the record at the plea hearing . . . . This discussion may occur through [1] an interrogation of the defendant about the underlying conduct and the evidence that would likely be presented at trial; [2] the introduction at the plea hearing of witness statements or other documents, or the presentation of abbreviated testimony from witnesses likely to testify at trial; or [3] a stipulation by both parties to a factual statement in one or more documents submitted to the court at the plea hearing.

*Id.* (citations omitted). As to the second requirement,

3

> [t]he best practice . . . is to have the defendant specifically acknowledge on the record at the plea hearing that the evidence the State would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty of the offense to which he is pleading guilty . . . .

*Id.* A thorough examination of the transcript here indicates that, although the district court did not abuse its discretion in finding that the two requirements of an *Alford* plea had been substantially complied with, the best practices were not followed.

In regard to the Hibbing charges, the factual basis and appellant's acknowledgment that the state's evidence could lead to a guilty verdict were established simultaneously by the district court's questioning of appellant. The district court questioned appellant not about what he had done but about what a jury could find.

> Q.   Is it fair to say that a jury could find here, based on the evidence that is here, that you . . . actually assaulted [the victim]? There is evidence here that you grabbed him by the neck and so forth. In one place it says that you bit his ear.
>      I am not asking you to agree that that's true but I am asking you to agree that a jury could find you actually guilty of a Felony Domestic Assault and you don't want to take that risk, so you agree that a jury could at least find you guilty of what could be considered a lesser included Misdemeanor Fifth Degree Assault.
>
> A.   Yeah, . . . allegedly there is some similar altercation[.] I'm just gonna like plead . . .
>
> Q.   [You] physically contacted him in a way that could meet the legal definition of intentional infliction of bodily harm upon him?
>
> A.   . . . [Y]eah, I am pleading guilty.
>
> Q.   [A] jury could believe that. . . . [And s]omebody . . . attempted to . . . call the police and the complaint indicates that you interfered with that call? . . .
>      Would you agree that a jury could find that you interfered with [the victim's] attempt to call 911?

A. I am going to plead guilty to that[, S]ir. Something happened to the phone.

Q. Yeah. So you agree with what I just said.

A. Yeah ---

Q. A jury could find you guilty of that?

A. Yeah, they could possibly –yes, yes.

Q. . . . [I]t is not just taking somebody's phone away – it is . . . where they had a good reason to call, an emergency, and . . . you disrupted or interfered with that. A jury could find you guilty of that and you don't want to take that risk?

A. I would hate to take the chance. I would rather just plead guilty . . . .

Thus, as to the Hibbing charges, the factual basis for them was established and appellant agreed that, based on the evidence, a jury could find him guilty. The district court then questioned appellant about the Virginia charges.

Q. . . . [I]n Virginia . . . [on] October 7th, . . . you got charged with violation of a Domestic Abuse No Contact order[,] a gross misdemeanor. Do you understand that charge?

A. Yeah.

Q. How do you plead?

A. Um – guilty.

. . . .

Q. Right, so there was a DANCO in place on October 7th?

A. Yes.

Q. And [the victim] called the police and said that you violated that order by contacting her . . . .
[Y]ou made contact and violated the order. Do you agree with that?

A. Apparently but I would just rather plead guilty, so I don't have . . .

Q. You could be found guilty and ---

A. Yes.

Q. [Y]ou want to get the benefit of this whole plea agreement. You agree there was a No Contact Order and also there was a prior domestic violence conviction that you had in 2007. And so, under the circumstances

5

> here this was a gross misdemeanor crime that you are pleading guilty here to today, right?
>
> A. I understand that, yes.

Again, the transcript indicates that appellant both admitted the factual basis and acknowledged the risk that a jury could find him guilty. However, acknowledging the risk is not enough. *Theis*, 742 N.W.2d at 650 ("In the context of an *Alford* plea, where a defendant maintains his innocence, the defendant's acknowledgment that there is a risk that he could be convicted does not meet [our] standard for accuracy . . . ."). Moreover, "[t]he best practice for ensuring [an accurate plea] is to have the defendant specifically acknowledge on the record at the plea hearing that the evidence the State would likely offer against him is sufficient for a jury, *applying a reasonable doubt standard,* to find the defendant guilty . . . ." *Id.* at 649 (emphasis added). This practice was never followed: the phrase "reasonable doubt" does not appear in the transcript.

Appellant's attorney did not specify whether he was referring to the Virginia charges or the Hibbing charges or both when he questioned appellant.

> Q. Now you are denying that in fact you did some of this stuff or at least you are not in agreement with some of the facts alleged in the police reports and the complaint, correct?
>
> A. Yes.
>
> Q. But you agree that if the matter went to a jury trial and if the state called the witnesses that they intend to call and if they testified consistent with the police report that a jury could in fact believe the state's version of events and *there would be significant evidence compelling enough to find you guilty?* I am not saying that that is the way it is going to go but it is [a] possible outcome, correct?
>
> A. Yeah that's right.

6

Q.  And . . . as a result of this [plea,] you are getting the benefit of the agreement.  Namely, you are getting three felony charges dismissed, correct?

A.  Yes that is true.

Q.  One of them, if not both of them, would call for a presumptive commit to prison, correct?

A.  Right.

Q.  . . . [B]y going forward in this fashion here today . . . you are getting the benefit of the agreement and this is in your best interest, . . . correct?

A.  Yeah.  I would rather not take chances on my life and ---

Q.  Right. . . . [Y]ou don't want [to] risk going back to prison here.  And this not only keeps you out of prison but gets rid of . . . potential[ly] three felony convictions, correct?

A.  Correct.

Q.  And so you are acknowledging to the court that the court can utilize the police reports for additional findings of fact to support the plea of guilty here today?

A.  Right.

(Emphasis added.)  Again, there was no reference to the jury finding appellant guilty using a reasonable-doubt standard.  Nor did the prosecutor refer to the reasonable-doubt standard when he questioned appellant: he asked appellant (1) if he understood that, if he were tried on the charges, the victims and some officers would testify and (2) if he agreed that the plea agreement was in his best interest and wanted the court to accept it.  Appellant answered that he understood and agreed.

Taken with the police report for the Hibbing charges and the complaint for the Virginia charges, the transcript reflects that the requirements *Theis* sets out for *Alford* pleas were met, but just barely: the factual support for both sets of charges were established, and appellant agreed that, based on this evidence, a jury would convict him.  But a reviewing court should not have to jump around the transcript of an *Alford* plea hearing and other

7

documents to determine whether the *Alford* plea requirements have been met:  if the best practices set out in *Theis* are followed, a reviewing court will be able to find readily the defendant's version of the factual basis for each charge and the defendant's acknowledgment that the state's evidence on each charge is sufficient for a jury, using the reasonable-doubt standard, to convict.  In the future, that is what we expect to see.

**Affirmed.**