*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1043**

State of Minnesota,
Respondent,

vs.

Kevin Dran Thomas,
Appellant.

**Filed June 10, 2024**
**Affirmed**
**Worke, Judge**

Otter Tail County District Court
File No. 56-CR-19-3124

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Michelle Eldien, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schmidt, Judge; and Florey, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**WORKE**, Judge

Appellant challenges his convictions for fifth-degree drug possession and operating a motor vehicle when his body contained a controlled substance, arguing that his *Alford* pleas are inaccurate. We affirm.

## FACTS

On October 19, 2019, an officer observed a speeding vehicle. When the officer followed the vehicle, it increased its speed to 93 miles per hour. The officer conducted a traffic stop. The driver, appellant Kevin Dran Thomas, exited the vehicle while eating handfuls of popcorn from a bag he was holding. The officer could smell alcohol and marijuana from inside the vehicle. The officer asked Thomas if he had been drinking alcohol. Thomas denied having anything to drink. The officer noticed Thomas making exaggerated arm movements. The officer again asked Thomas if he had been drinking alcohol. Thomas stated that he drank one beer approximately six hours earlier and had also taken prescribed medication earlier in the day. The officer administered a preliminary breath test that showed an alcohol concentration of 0.07.

During a search of the vehicle, the officer found a bottle of vodka in the glovebox and a pill bottle belonging to Thomas underneath the driver's seat. The pill bottle held marijuana and a trace amount of cocaine. The officer arrested Thomas. Thomas provided a urine sample, stating that the test would be positive for marijuana. Thomas's urine sample tested positive for marijuana and cocaine.

Respondent State of Minnesota charged Thomas with fifth-degree controlled-substance possession and three counts of operating a motor vehicle under the influence (DWI)—under the influence of alcohol, under the influence of a controlled substance, and when his body contained a controlled substance. *See* Minn. Stat. §§ 152.025, subd. 2(1), .169A.20, subd. 1(1), (2), (7) (2018).

In April 2023, the parties reached a plea agreement. Thomas would plead guilty to fifth-degree controlled-substance possession and one count of DWI—body contained a controlled substance. The district court stated that Thomas would proceed with *Alford* pleas[1] and noted that it would also rely on the law-enforcement reports in the file. The prosecutor questioned Thomas:

> Q:   Are you pleading because you're guilty?
> A:   I'm pleading guilty because I don't have the money to fight the case.
> Q:   Okay.
> A:   So yes.
> Q:   So if we are proceeding under . . . what we call [an] *Alford* plea, you've been over all the evidence with your attorney; correct?
> A:   Yes.
> Q:   And do you believe that if we had a jury trial and the [s]tate . . . presented that evidence to a jury, do you think a jury would be substantially likely to find you guilty of these charges?
> A:   No.
> Q:   You don't believe that if . . . the [s]tate presented evidence in the form of testimony from the officers,

---

[1] "A plea constitutes an *Alford/Goulette* plea if the defendant maintains innocence but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction." *Williams v. State*, 760 N.W.2d 8, 12 (Minn. App. 2009), *rev. denied* (Minn. Apr. 21, 2009); *see North Carolina v. Alford*, 400 U.S. 25, 37 (1970); *State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977).

squad videos, [Bureau of Criminal Apprehension (BCA)] test results, do you believe that if all that evidence came in a jury would be substantially likely to find you guilty of these charges?

A: If I . . . could afford a decent lawyer and was able to be out on bond and stuff and wait -- yes, I think . . . I would be able to prove my case but I'm not so yes. I'm guilty.

The district court did not accept Thomas's guilty plea. It asked Thomas:

would you agree that if the officer testified to the impairment that he saw that day, and the test that you gave . . . was presented to the jury and the scientist came in and said . . . we tested this and it had cocaine or it's metabolite in his system that you would be substantially likely to be found guilty relating to that?

Thomas replied: "Probably." The prosecutor resumed questioning Thomas:

Q: And you would agree that th[e] search [of the vehicle] unveiled a pill bottle that had a trace amount of cocaine in it. Would you agree that . . . was recovered?

A: I don't know what was in the cocaine bottle, I mean, what you said there was cocaine . . . in a bottle. I don't know any cocaine to be in a bottle. But I mean, I was driving so I'm possessing the car so I guess . . . I'm responsible.

Q: Okay. And so as we discussed before, you've been over all the evidence with your attorney, right?

A: Yes.

Q: And that includes BCA reports, right?

. . . .

Q: [T]here was a BCA report for the urine sample, right?

A: Yes.

Q: And there was another BCA report for the controlled substances that were recovered from your vehicle, right? There w[ere] two BCA reports.

A: Yes.

Q: And you would agree that one of those BCA reports indicated that there was a pill bottle in . . . your vehicle that had trace amounts of cocaine. You agree that that's the evidence that's presented to the [c]ourt, right?

4

A: They found that, but . . . yes.

Q: Okay. And you know that cocaine is a schedule II controlled substance and illegal to possess, right?

A: Yes.

Q: Okay. And then furthermore, you'd agree that ultimately there was some evidence that you were possibly driving while impaired and the deputy did obtain a search warrant for a bodily fluid sample. Is that correct?

A: Yes.

Q: And you did comply with a urine sample, right?

A: Yes.

Q: And . . . that urine sample came back positive also for cocaine, right?

A: Yes.

Q: And as we just covered cocaine's a schedule II controlled substance.

A: Yes.

Q: And you understand that any amount of a schedule II controlled substance in your system does constitute a DWI charge. You understand that?

A: Yes.

The district court then questioned Thomas:

Q: All right. And ultimately, you understand that [the pill bottle is] where . . . the trace amount of cocaine came from[?]

A: Right. I didn't know about it. And I kept like --

Q: Right.

A: [Y]ou know, . . . I knew [there] was a joint in there but I didn't know that there was any cocaine [in] there. I didn't know that.

. . . .

Q: And you knew the marijuana was in the car and you knew that there was this container somewhere in your car, right?

A: Yeah. I knew, yeah.

Q: All right. And you . . . believe[] that if [officers] came in and testified that this is where they found it, . . . the BCA comes in and says we tested it and it had cocaine

5

> trace at the bottom, that you'd be likely convicted and you want to take advantage of this plea offer here today?
>
> A:   Yes.

The district court concluded that Thomas provided an adequate factual basis to support the *Alford* pleas through his admissions and the law-enforcement reports. For the controlled-substance-possession conviction, the district court sentenced Thomas to a stay of adjudication with a two-year probationary period. For the DWI conviction, the district court sentenced Thomas to one year in jail, stayed for six years. This appeal followed.

## DECISION

Thomas claims that he should be permitted to withdraw his *Alford* pleas because they are inaccurate.

"A defendant does not have an absolute right to withdraw a valid guilty plea." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). But "a court must allow withdrawal of a guilty plea [when] . . . necessary to correct a manifest injustice." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010) (quotation omitted). "A manifest injustice exists if a guilty plea is not valid." *Id.* at 94. We review the validity of a guilty plea de novo. *Id.*

To be valid, amongst other things, a guilty plea must be accurate. *Theis*, 742 N.W.2d at 646. An accurate *Alford* plea requires "a strong factual basis" supporting the elements of the offense, and the defendant's agreement "that [the] evidence the [s]tate is likely to offer at trial is sufficient to convict." *Id.* at 647 (quotation omitted), 649. A strong factual basis may be established by discussing with the defendant on the record the evidence that the state would likely offer at trial. *Id.* at 649.

6

Thomas argues that his *Alford* pleas are not accurate because he disclaimed his guilt, did not admit that a jury would find that he knew that he possessed cocaine or that there was cocaine in his body, and responded only to a hypothetical leading question. But the record shows that Thomas's *Alford* pleas are accurate and valid because Thomas agreed that the state's evidence was sufficient to convict him, and the factual basis supports the elements of the offenses.

First, Thomas asserts that he disclaimed his guilt. However, in an *Alford* plea, the defendant pleads guilty "despite his inability to admit guilt or his affirmative belief in his innocence." *Id.* at 647. By its description, a district court may accept an *Alford* plea when a defendant disclaims guilt.

Next, Thomas asserts that he did not admit that the state's evidence would likely lead a jury to convict him. *See id.* (stating that *Alford* plea is valid when defendant maintains innocence and clearly expresses belief that state's evidence would be sufficient to convict). At one point during the plea hearing, Thomas did not admit that he believed that, if the state presented its evidence to a jury, the jury would be substantially likely to find him guilty. After that, the district court did not accept Thomas's guilty plea. But then the district court asked Thomas:

> [W]ould you agree that if the officer testified to the impairment that he saw that day, and the [urine] test that you gave . . . was presented to the jury and the scientist came in and said . . . we tested this and it had cocaine or it's metabolite in his system that you would be substantially likely to be found guilty relating to that?

Thomas replied: "Probably." And when the district court asked Thomas:

7

> And [do] you believe[] that if [officers] came in and testified that [the pill bottle] is where they found [the substance], [and] . . . the BCA comes in and says we tested it and it had cocaine trace at the bottom, that you'd be likely convicted and you want to take advantage of this plea offer here today?

Thomas replied: "Yes." In doing so, he agreed that the evidence that the state would present regarding his signs of impairment, the substances detected in his system, and the presence of cocaine in a pill bottle in his vehicle was sufficient to convict him of both DWI—body contained a controlled substance and fifth-degree controlled-substance possession.

Thomas also argues that the factual basis does not establish the elements of the offenses. Thomas pleaded guilty to fifth-degree controlled-substance possession. A person is guilty of fifth-degree controlled-substance possession if he "unlawfully possesses one or more mixtures containing a controlled substance classified in Schedule I, II, III, or IV." Minn. Stat. § 152.025, subd. 2(1). Thomas claims that the factual basis does not establish that he knew that he possessed cocaine.

Thomas was asked: "[Y]ou would agree that [a] BCA report[] indicated that there was a pill bottle in . . . your vehicle, that had trace amounts of cocaine. You agree that that's the evidence that's presented to the [c]ourt, right?" Thomas replied: "They found that, but . . . yes. Yes." He was also asked that if a "BCA [analyst] comes in and says we tested [the substance in the pill bottle] and it had cocaine trace . . . that you'd be likely convicted and you want to take advantage of this plea offer here today?" Thomas replied: "Yes." Thomas also admitted that cocaine is a schedule II substance that is unlawful to

8

possess. Thomas's admissions—that he possessed a pill bottle that contained trace amount of cocaine, which is unlawful to possess—establish the elements of the offense.

Thomas also pleaded guilty to DWI—controlled substance in his body. A person is guilty of DWI when he drives a motor vehicle when his "body contains any amount of a controlled substance listed in Schedule I or II, or its metabolite." Minn. Stat. § 169A.20, subd. 1(7). There is no dispute that Thomas was driving a motor vehicle. And Thomas agreed that his "urine sample came back positive . . . for cocaine," that cocaine is a "schedule II controlled substance," and that he "understand[s] that any amount of a schedule II controlled substance in your system does constitute a DWI charge." The BCA report, which is in the record, and Thomas's admissions establish the elements of the DWI offense.

Finally, Thomas argues that he simply responded to a hypothetical question about what a jury would do if the state presented its evidence. The district court questioned Thomas:

> And you . . . believe[] that *if* [officers] came in and testified that this is where they found [the pill bottle] . . . the BCA comes in and says we tested it and it had cocaine trace at the bottom, that you'd be likely convicted and you want to take advantage of this plea offer here today?

(Emphasis added.) Thomas agreed. He challenges the use of the word "if" in the question.

In *Theis*, the supreme court stated that when establishing a factual basis for an *Alford* plea, "[t]he best practice . . . is to have the defendant specifically acknowledge on the record . . . that the evidence the [s]tate would likely offer against him is sufficient for a jury, applying a reasonable doubt standard," to find him guilty. 742 N.W.2d at 649. The

supreme court in *Theis* specifically stated that the factual basis for the *Alford* plea in *State v. Ecker*, 524 N.W.2d 712 (Minn. 1994) was sufficient, based in part on defense counsel asking "Ecker if he would agree 'that *if a jury were to hear* all of that evidence and put it together, they would undoubtedly come to the conclusion that'" he was guilty of shooting the victim.  *Id.* at 648 (emphasis added).  The format of the question was not inappropriate. Based on the record, Thomas's *Alford* pleas are accurate and valid, and he has failed to show that he should be permitted to withdraw them to correct a manifest injustice.

      **Affirmed.**