*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1593**

State of Minnesota,
Respondent,

vs.

Cody John Opheim,
Appellant.

**Filed August 15, 2016
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Martin County District Court
File Nos. 46-CR-14-525, 46-CR-14-817

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Terry W. Viesselman, Martin County Attorney, Fairmont, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Veronica M. Surges, Assistant Public Defenders, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his convictions of second-degree assault and escape from custody, arguing that the district court erred by denying his presentence request for plea withdrawal under the manifest-injustice and fair-and-just standards. We conclude that appellant's guilty pleas are valid and that he is not entitled to plea withdrawal under the manifest-injustice standard. We therefore affirm in part. However, because the district court failed to apply the fair-and-just standard when deciding appellant's request for plea withdrawal, we reverse in part and remand for a determination under that standard.

## FACTS

Respondent State of Minnesota charged appellant Cody John Opheim with second-degree assault, two counts of fourth-degree assault, and obstructing legal process. The complaint alleged that on June 5, 2014, Fairmont police officers responded to Opheim's home after receiving a report of a suicidal man with a knife. The complaint further alleged that officers encountered Opheim, who was sitting on a couch, and told him that they were there to help. Opheim pulled out a knife from behind a cushion and held it with the blade pointed out in front of him. Officers drew their weapons and ordered Opheim to drop the knife. Opheim raised the knife up to the side of his head with his elbow bent and his forearm forward, holding the knife blade forward toward the officers in an "aggressive" manner. Officers continued to tell Opheim to drop the knife, and Opheim stabbed the knife into the couch cushion. Officers obtained the knife, and took Opheim into custody. As they did so, Opheim punched one officer and kicked another.

On June 10, Opheim appeared before the district court, in custody, and asked the district court to release him to Fountain Centers, where he had been participating in an inpatient treatment program. The district court ordered the following:

> All right. Mr. Opheim, I'm going to set some conditions. The bail is $5,000. Now, in order for you to be released, except back to Fountain Centers, you'd have to post a bond or bail. You cannot use alcohol or any other chemicals unless it's prescribed to you by a physician, and you'll be subject to random testing. You shouldn't travel outside of Minnesota. If you change your address, you should tell your attorney and court administrator. And, you should surrender any weapons to law enforcement to be held while this case is pending. You may continue at Fountain Centers, inpatient as long as you're following the rules there . . . .

On July 11, the district court filed a written order, stating: "It is hereby ordered that Cody John Opheim's furlough from jail for treatment may continue as long as he is in the House of Hope half way house program. If he leaves House of Hope or is discharged from House of Hope, he should immediately return to jail." The district court mailed a notice of filing of the order to Opheim's attorney. The record does not reveal what prompted the order.

On August 14, the state charged Opheim with felony-level escape from custody, alleging that Opheim left House of Hope on August 11 and did not return to jail as required by the July 11 order.

In December, Opheim appeared in district court with a new attorney and reached a plea agreement with the state. Opheim agreed to plead guilty to second-degree assault and escape from custody, and the state agreed to dismiss the other charges. The agreement called for a 21-month stayed sentence on the second-degree-assault charge and a gross-

3

misdemeanor sentence on the escape charge. Opheim pleaded guilty and provided a factual basis for his pleas through a colloquy as follows:

> Q: Mr. Opheim, back on June 5th, 2014, . . . police officers came to your residence in Fairmont, Martin County, Minnesota; is that right?
> A: Yes.
> Q: And when they came there you were seated on a couch and while they were talking to you, you pulled out a knife and held it up; is that correct?
> A: Yes.
> Q: And the officers felt threatened by that knife; you understand that?
> A: Yes.
> Q: And that's the basis for your plea in this case?
> A: Yes.
> Q: And as a result of that incident you were placed in arrest and held here in the jail and you were furloughed to go to treatment at Fountain Centers and—or was it the House of Hope?
> A: Fountain Centers in Albert Lea, and then after I passed that it was House of Hope in Mankato.
> Q: Okay. And part of your furlough order [was] that when you were done with Fountain Centers, House of Hope, or discharged from treatment, you were to return immediately to jail?
> A: Yes.
> Q: Is that right? And you were discharged from House of Hope on August 11th, 2014, and you didn't come back to the jail; is that correct?
> A: Yes.
> Q: And the jailers found out. They called House of Hope, found out you had left and you were basically tracked down; is that right?
> A: Yes.

Prior to sentencing, Opheim moved to withdraw his guilty pleas. Opheim asserted that it was fair and just to allow plea withdrawal because he was not guilty of the charges and that his pleas were not valid because he was not fully aware of the ramifications of

4

pleading guilty. Opheim argued that his pleas were not intelligent because he thought he was facing seven years in prison rather than 21 months, which was the presumptive sentence for his second-degree-assault charge. Opheim also argued that his pleas were not accurate because the factual basis for each charge was established through leading questions. Opheim further argued that he was not guilty of second-degree assault because he did not cause fear in the officers and that he was not guilty of escape from custody because he was not aware of the July 11 order requiring his return to jail if he left House of Hope. In his brief supporting the motion, Opheim's attorney noted that "[w]hen taking over the file from [Opheim's] previous attorney I found that I did not have a copy of [the July 11] order in the file so I am not sure if he was ever notified of that requirement."

The district court held a hearing on Opheim's motion and heard testimony from Opheim and his mother. After the hearing, the district court issued a written order. The order indicates that the district court considered whether plea withdrawal was necessary to "correct a manifest injustice," but not whether plea withdrawal was fair and just. The district court concluded that Opheim's guilty pleas were accurate, voluntary, and intelligent and denied his request for plea withdrawal.

The district court stayed imposition of sentence on the second-degree-assault conviction and placed Opheim on probation. The district court imposed a stayed 240-day jail sentence on the escape-from-custody conviction. This appeal follows.

### DECISION

"A defendant does not have an absolute right to withdraw a valid guilty plea." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). Guilty pleas may be withdrawn only if one

5

of two standards is met. *See* Minn. R. Crim. P. 15.05 (setting forth the manifest-injustice and fair-and-just standards for plea withdrawal).

The district court must allow plea withdrawal at any time "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." *Id.*, subd. 1. A manifest injustice exists if a guilty plea is not valid. *Theis*, 742 N.W.2d at 646. To be valid, a guilty plea must be "accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994).

> The accuracy requirement protects the defendant from pleading guilty to a more serious offense than he or she could be properly convicted of at trial. The voluntariness requirement insures that the guilty plea is not in response to improper pressures or inducements; and the intelligent requirement insures that the defendant understands the charges, his or her rights under the law, and the consequences of pleading guilty.

*Carey v. State*, 765 N.W.2d 396, 400 (Minn. App. 2009) (quotation omitted), *review denied* (Minn. Aug. 11, 2009). "A defendant bears the burden of showing his plea was invalid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). The validity of a plea is a question of law that we review de novo. *Id.*

The district court may allow plea withdrawal before sentencing "if it is fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2. "The court must give due consideration to the reasons advanced by the defendant in support of the motion and any prejudice the granting of the motion would cause the prosecution by reason of actions taken in reliance upon the defendant's plea." *Id.* A defendant bears the burden of advancing reasons to support withdrawal. *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989). The state bears the burden

6

of showing prejudice caused by withdrawal. *State v. Wukawitz*, 662 N.W.2d 517, 527 (Minn. 2003). Although it is a lower burden, the fair-and-just standard "does not allow a defendant to withdraw a guilty plea for simply any reason." *Theis*, 742 N.W.2d at 646 (quotation omitted). Allowing a defendant to withdraw a guilty plea "for any reason or without good reason" would "undermine the integrity of the plea-taking process." *Kim*, 434 N.W.2d at 266. We review a district court's decision to deny a motion to withdraw a guilty plea under the fair-and-just standard for an abuse of discretion, reversing only in the "rare case." *Id.*

Opheim argues for relief under both the manifest-injustice and fair-and-just standards. "[I]f a review of the record demonstrates that [a defendant's] plea was invalid, we need not reach the question of whether withdrawal may have been authorized under the discretionary fair-and-just standard because the manifest injustice standard . . . requires withdrawal where a plea is invalid." *Theis*, 742 N.W.2d at 646. We therefore first consider whether Opheim is entitled to plea withdrawal under the manifest-injustice standard.

*Manifest-Injustice Standard: Second-Degree Assault*

Opheim argues that his "guilty plea to second-degree assault was not voluntary because he was told that he would receive a downward departure, when in fact he received the guidelines sentence."

> [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. If a promise within a plea agreement is not fulfilled,

7

> the defendant cannot be said to have voluntarily entered into the plea agreement.

*Carey*, 765 N.W.2d at 400 (citation and quotations omitted).

Opheim states that his trial counsel told him that the presumptive sentence for second-degree assault under the sentencing guidelines was a 21-month executed sentence and that, in exchange for pleading guilty, he would receive a downward departure and a stayed sentence. Opheim argues that "[i]n fact, the Minnesota Sentencing Guidelines called for [him] to receive a stayed sentence, and the mandatory minimum statute that would arguably have been applicable would only have required an executed sentence of a year and a day." Opheim therefore contends that he "was not actually facing a presumptive 21-month executed sentence, and so pled guilty in order to receive a benefit that was not, and could not, be delivered."

Minn. Stat. § 609.11, subds. 4, 9 (2012), provides that any defendant convicted of second-degree assault

> in which the defendant or an accomplice, at the time of the offense, used, whether by brandishing, displaying, threatening with, or otherwise employing, a dangerous weapon other than a firearm, shall be committed to the commissioner of corrections for not less than one year plus one day, nor more than the maximum sentence provided by law.

And the Minnesota Sentencing Guidelines provide that "[r]egardless of whether an offender would otherwise receive a presumptive stayed sentence under the Guidelines, the presumptive disposition for an offense subject to a mandatory sentence under Minnesota Statutes, section 609.11, is always commitment." Minn. Sent. Guidelines 2.E.2.b.(1) (Supp. 2013).

8

Moreover:

> When an offender is convicted of an offense with a statutory mandatory minimum sentence of one year and one day or more, the presumptive disposition is commitment even if the presumptive sentence would ordinarily fall within the shaded area on the applicable Grid. The presumptive duration of the prison sentence is the mandatory minimum sentence in statute or *the duration provided in the appropriate cell on the applicable Grid, whichever is longer*.

Minn. Sent. Guidelines 2.E.1 (Supp. 2013) (emphasis added).

The comment to Minn. Sent. Guidelines 2.E.1 provides an example that explains exactly how to calculate the presumptive sentence for a defendant with a criminal-history score of zero who is convicted of second-degree assault with a knife:

> For example, according to Minnesota Statutes, Section 609.11, the mandatory minimum prison sentence for Assault in the Second Degree involving a knife is one year and one day. However, according to the Guidelines, the presumptive duration is the mandatory minimum sentence or the duration provided in the appropriate cell on the Standard Grid, whichever is longer. Therefore, for someone convicted of Assault in the Second Degree with a Criminal History Score of 0, the Guidelines presume a 21 month prison duration based on the appropriate cell on the Standard Grid found at Severity Level 6.

Minn. Sent. Guidelines cmt. 2.E.01 (Supp. 2013).

In sum, because Opheim had a criminal-history score of zero, the presumptive sentence for the second-degree-assault offense under the sentencing guidelines was 21 months in prison. Thus, Opheim's argument that his guilty plea was involuntary and therefore invalid, because he "was not actually facing a presumptive 21-month executed sentence," is without merit.

Opheim next argues that his guilty plea to second-degree assault was inaccurate because he did not provide a sufficient factual basis for the plea. "A proper factual basis must be established for a guilty plea to be accurate." *Theis*, 742 N.W.2d at 647 (quotation omitted). "The factual basis must establish sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Munger v. State*, 749 N.W.2d 335, 338 (Minn. 2008) (quotations omitted). "Although there are various ways to present the factual basis for a guilty plea, all of them contemplate the disclosure on the record of the specific facts that would establish the elements of the crime to which the defendant is pleading guilty." *State v. Misquadace*, 629 N.W.2d 487, 491-92 (Minn. App. 2001), *aff'd*, 644 N.W.2d 65 (Minn. 2002).

"Whoever assaults another with a dangerous weapon" is guilty of second-degree assault. Minn. Stat. § 609.222, subd. 1 (2012). The definition of assault includes "an act done with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.02, subd. 10(1) (2012). "'With intent to' . . . means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2012).

Opheim argues that "[t]here is nothing in the plea colloquy that would establish either that [he] intended to cause fear in the officers, or that a factfinder could infer that he intended to cause fear." But during the plea colloquy, Opheim agreed that he pulled out a knife, held it up, and that the officers felt threatened by that knife. Although Opheim did not testify that he intended to cause fear of immediate bodily harm, it may be inferred that "a person intends the natural and probable consequences of his actions." *State v. Cooper*,

10

561 N.W.2d 175, 179 (Minn. 1997). Moreover, the supreme court has established that a court may consider the facts alleged in a criminal complaint when determining whether an adequate factual basis exists for a plea. *See, e.g.*, *State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983) (concluding that an adequate factual basis for a plea existed in part because by pleading guilty, the defendant "in effect judicially admitted the allegations contained in the complaint"); *State v. Hoaglund*, 307 Minn. 322, 326-27, 240 N.W.2d 4, 6 (1976) (considering the contents of the criminal complaint, among other documents in the record, before concluding that a plea lacked an adequate factual basis).

The complaint in this case alleged that after officers told Opheim to drop the knife, he raised the knife up to the side of his head with his elbow bent and his forearm forward, holding the knife blade forward toward the officers in an "aggressive" manner. Opheim's admissions at the plea hearing combined with the allegations in the complaint support an inference that he intended to cause fear of immediate bodily harm. *See State v. Neumann*, 262 N.W.2d 426, 430 (Minn. 1978) ("It is well established that before a plea of guilty can be accepted, the [district court] must make certain that facts exist from which the defendant's guilt of the crime charged can be reasonably inferred."), *abrogated on other grounds by State v. Moore*, 481 N.W.2d 355 (Minn. 1992); *Smith v. State*, 596 N.W.2d 661, 665 (Minn. App. 1999) (concluding that a manifest injustice did not exist where the defendant's testimony was "sufficient to infer [his] guilt"), *review denied* (Minn. Aug. 27, 1999).

"The main purpose of the accuracy requirement is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on

his right to trial." *Trott*, 338 N.W.2d at 251. That is not a concern given the record in this case. In sum, Opheim has not met his burden to show that his guilty plea was inaccurate and therefore invalid.

*Manifest-Injustice Standard: Escape from Custody*

Opheim argues that his guilty plea to escape from custody was inaccurate because he did not provide a sufficient factual basis for the plea. Whoever "escapes while . . . in lawful custody on a charge or conviction of a crime" is guilty of escape from custody. Minn. Stat. § 609.485, subd. 2(1) (2014). "'Escape' includes departure without lawful authority and failure to return to custody following temporary leave granted for a specific purpose or limited period." *Id.*, subd. 1 (2014). Failure to return from a furlough constitutes an escape under Minn. Stat. § 609.485, subd. 1. *Headbird v. State*, 375 N.W.2d 90, 92 (Minn. App. 1985), *review denied* (Minn. Dec. 13, 1985).

At the plea hearing, Opheim admitted that he was arrested and held in jail as a result of the knife incident, he was furloughed from jail to the House of Hope for treatment, he was ordered to return to jail if he completed treatment or was discharged from House of Hope, he was discharged from House of Hope, and he did not return to jail. Thus, Opheim provided a factual basis that establishes the elements of the offense and supports a conclusion that his conduct falls within the charge to which he pleaded guilty. *See Munger*, 749 N.W.2d at 338 (stating that a defendant's factual basis must "support a conclusion that [the] defendant's conduct falls within the charge to which he desires to plead guilty" (quotations omitted)).

12

Opheim also argues that his escape-from-custody guilty plea is inaccurate "because the record shows that the conditions of his release were never properly modified to place him on furlough status." Essentially, Opheim attempts to raise a legal challenge to the underlying custody order in the context of his challenge to the factual basis for his plea. Because a counseled guilty plea waives all nonjurisdictional defects, we do not consider this argument. *See State v. Ford*, 397 N.W.2d 875, 878 (Minn. 1986) ("A guilty plea by a counseled defendant has traditionally operated, in Minnesota and in other jurisdictions, as a waiver of all non-jurisdictional defects arising prior to the entry of the plea."); *see also State v. Johnson*, 422 N.W.2d 14, 18 (Minn. App. 1988) ("Appellant's guilty plea waived his nonjurisdictional statute of limitations defense."), *review denied* (Minn. May 16, 1988).

In sum, Opheim has not met his burden to show that his guilty plea to escape from custody was inaccurate and therefore invalid. Because we are satisfied that Opheim's guilty pleas are valid and do not discern a manifest injustice necessitating plea withdrawal, we turn to the fair-and-just standard. *Cf. Theis*, 742 N.W.2d at 646 (stating that it is unnecessary to determine whether plea withdrawal is authorized under the fair-and-just standard if a defendant's plea was invalid).

*Fair-and-Just Standard*

Opheim argues that "[i]t would have been fair and just to allow [him] to take his [second-degree assault] case before a jury, and to present evidence that he did not use the knife with the intent to cause fear in the officers of great bodily harm," noting that a police officer admitted that four of the officers who responded to his home "were not trained to handle situations involving a suicidal person who called the police for help" and the

13

officers mocked him during the incident. Opheim also argues that he should have been allowed to withdraw his guilty plea to escape from custody under the fair-and-just standard because "he was never told that he was on furlough status or had to return to prison" and "he pled guilty to violating a condition of his release that was likely not lawfully imposed."

Even though Opheim requested plea withdrawal under both the manifest-injustice and fair-and-just standards, as he was allowed to do before sentencing, the district court's order does not suggest that it considered or applied the fair-and-just standard. In fact, the order does not mention the fair-and-just standard. Instead, it sets forth only the manifest-injustice standard, despite acknowledging that the motion was for presentence plea withdrawal. *See* Minn. R. Crim. P. 15.05, subd. 2 ("In its discretion the court may allow the defendant to withdraw a plea at any time before sentence if it is fair and just to do so."). And the district court ruled only that withdrawal of Opheim's guilty pleas is not "necessary to correct a manifest injustice."

A decision whether to allow presentence plea withdrawal is entrusted to the district court's discretion, and we generally defer to an exercise of that discretion. *See Kim*, 434 N.W.2d at 266 (stating that the district court's decision to deny a motion to withdraw a guilty plea under the fair-and-just standard is reviewed for an abuse of discretion, and appellate courts reverse only in a "rare case"). Here, however, the district court failed to exercise its discretion. Because the district court did not consider Opheim's presentencing request for plea withdrawal under the fair-and-just standard, we reverse in part and remand for the district court to consider the request under that standard. *See State v. Cubas*, 838 N.W.2d 220, 224 (Minn. App. 2013) ("Although a decision to allow plea withdrawal is

14

discretionary under [rule 15.05,] subdivision 2, a district court must apply the standard mandated by the rule when exercising its discretion."), *review denied* (Minn. Dec. 31, 2013).  The district court is not required to reopen the record on remand.  *See Taylor v. LSI Corp. of Am.*, 781 N.W.2d 912, 917 (Minn. App. 2010) (stating that it is in the district court's discretion whether to reopen the record on remand), *aff'd*, 796 N.W.2d 153 (Minn. 2011).

      **Affirmed in part, reversed in part, and remanded.**